## Osterheldt *v.* Philadelphia.

*Appeals—Failure to print evidence—Referee's finding of fact.*

Assignments alleging error in a referee's findings of fact will be overruled and dismissed by the Supreme Court, where the appellant has failed to print the testimony.

*Road law—Laying out streets according to plan—Act of May 9, 1889, P. L. 173.*

The act of May 9, 1889, which provides that streets laid out by a plot or plan, which have not been opened to or used by the public, for twenty-one years next after the laying out of the same, shall not be opened without the consent of the owner of the land, has no retroactive effect so as to apply to streets opened and used prior to its passage.

*Road law —Dedication of street.*

A deed of land, in accordance with a plan of lots and streets, made by the owner of the land, has the effect to dedicate to public use the strips of land designated as streets, and gives the right to use the streets not only to purchasers of lots on the plan, but to all other persons who might desire to use the streets; and the dedication is irrevocable by either the grantor or those claiming title under him. The deed operates as a relinquishment of all claims for damages for the use of the land, when the street is actually opened. It is only in cases where the act of May 9, 1889, applies, that damages may be recovered.

Argued Jan. 9, 1900. Appeal, No. 243, Jan. T., 1899, by defendant, the city of Philadelphia, from order of C. P. No. 3, Phila. Co., Sept. T., 1890, No. 589, dismissing exceptions to report of referee. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Appeal from jury of view.

Exceptions to report of referee, Hampton L. Carson, Esq.

From the referee's findings of fact it appeared that on April 30, 1849, Richard Peters conveyed a lot of ground to Frederick Osterheldt. Prior to this deed Peters had laid out a tract of land of which the Osterheldt lot was a part, in lots, according to a plan upon which streets were indicated. This plan was recorded. The description in the deed referred to the streets mentioned in the plan. One of these streets was known as Preston street. In reference to this street the referee reported as follows:

At the time of the purchase Preston street was not technically opened, but the plaintiff's testator's property was fenced in, originally by a post and rail fence, and subsequently by a board fence, renewed at various times and continuing down to the present time, on the line of Preston street, so as to give a frontage on Lancaster avenue of 100 feet and the same on Story street in the rear. In this fence were two gates, the positions of which were subsequently shifted, by means of which side entrances were gained from the said Preston street to the plaintiff's lot. For three or four years there was no inclosure of the bed of Preston street, either on the Lancaster avenue or Story street side. The public used it in driving chiefly in passing from Story street, then a summer road, into Lancaster turnpike, with a view of avoiding a toll gate on Lancaster turnpike. The natural grade of Preston street at the Story street end was about four feet above that of Story street, and as a result of the public use a hole or quagmire was worn, which, proving dangerous to an equestrian, led to the erection by the plaintiff's testator, about four years after the vesting of his title, of two or three posts with a rail on top for a distance of fifty feet, at the top of the bank at the Story street end. The result of this was to divert the public

travel from Story street into Lancaster avenue, and vice versa from a track at right angles to a track at an oblique angle across what was known as the Wallace lot, lying opposite to the plaintiff's lot, and separated from it by Preston street. This continued to be the condition of affairs until some time between 1865 and 1870, when both Story street end and the Lancaster avenue end of said Preston street were enclosed by the plaintiff's testator by the erection of substantial fences and a large gate on the Lancaster avenue front, by which means twenty-five feet of Preston street were occupied by the plaintiff's testator, making a side yard or entrance into his place. The board fence, with gates, was still maintained along the original line of Preston street. Mr. Wallace acted in the same manner as to the remaining twenty-five feet of Preston street, and both Wallace and Osterheldt erected a line fence between them down the middle of Preston street.

Up to this date the only manner in which Preston street appeared upon any city plan was by dotted lines, and this was upon a plan confirmed by the court of quarter sessions in 1856, and again confirmed by the board of surveys in 1874. There had never been any formal acceptance by the village of Mantua or the township of Blockley, or by the city of Philadelphia of the dedication by Peters. There was no locating or opening of said street by ordinance, nor had any municipal improvements, such as grading, curbing or paving been attempted.

In 1856 or 1857 a street then called and now known as Preston street was put upon the city plan, and was duly opened for public travel, situate at about the distance of 250 feet away from the fifty feet wide strip between Lancaster avenue and Story street, which was dedicated by Peters as Preston street.

In 1868 the city paved Lancaster avenue (formerly turnpike), and in passing the property of the plaintiff's testator paved across the mouth of Preston street in solido, making no turns in the curbstones at points of intersection, and not dropping the curb line as it crossed the bed of Preston street. A footwalk was put down and maintained across the same ground, and in order to give access to the gate erected on the Lancaster avenue end of Preston street a heavy plank, supported by gutter irons, was put in place.

In 1884 the councils of the city of Philadelphia, by ordinance dated April 5, 1884 (Ordinances of 1884, p. 113), directed that the department of surveys be authorized to revise plan No. 105, so as to place thereon Fairmount avenue, from Preston street to Lancaster avenue, of the width of fifty feet, placing it "so as to include an old street on said line called Preston street, which has never been located."

Under this ordinance the twenty-five feet of ground, which the plaintiffs' testator has inclosed as above described, was taken and thrown into a fifty feet wide street, between Lancaster avenue and Story street, on the exact lines of the Preston street as described in Peters's deed. The proper proceedings were taken, and were followed by grading, curbing and paving, and throwing the same open to public use, and now constitute a part of Fairmount avenue.

The net result of these various steps is that the exact ground which was the boundary on the east of the plaintiffs' testator's lot as described in his deed, and called by Peters "Preston street," has become under the ordinance of 1884 an open public street, now known as Fairmount avenue, while the name "Preston" belongs to a street between 250 and 300 feet away.

The plaintiff alleged a taking of his property for public use by which he had suffered damages, and brought this suit to recover them.

The referee reported in favor of the defendant.

Exceptions to the referee's report were sustained by the court, and the referee in a second report reported in favor of the plaintiff and assessed the damages at $3,750.

Exceptions to the final report of the referee were dismissed by the court.

*Errors assigned* were in dismissing exceptions to referee's report.

*Chester N. Farr, Jr.,* assistant city solicitor, with him *John L. Kinsey,* city solicitor, for appellant.—This case is identical in fact with the case of Quicksall v. Philadelphia, 177 Pa. 301, with the important exception that the Act of May 9, 1889, P. L. 173, upon which the court decided that case can have no bearing here, since Fairmount avenue, formerly Preston street,

was opened in 1884, five years before the passage of the act in question.

In the Quicksall case there was a valid dedication to the public, by a sale of lots according to a plan recorded. This has invariably been held to constitute a dedication of the streets, plotted thereon to public uses: Quicksall v. Philadelphia, 177 Pa. 301; Dobson v. Hohenadel, 148 Pa. 367; Davis v. Sabita, 63 Pa. 90; Schenley v. Com., 36 Pa. 62.

User by the public and the placing of the street upon the city plan have been held evidence of acceptance of a dedication: Com. v. Moorehead, 118 Pa. 344.

If the acts of Peters, the original grantor, combined with the circumstances of the case constitute a valid dedication of a public highway, then no trespasses of the appellee thereon, no matter how long continued, could divest the public rights: Com. v. Alburger, 1 Whart. 468; Com. v. McDonald, 16 S. & R. 390; In re Penny Pot Landing, 16 Pa. 79; Kopf v. Utter, 101 Pa. 27.

When one sells and conveys lots according to a plan which shows them to be on streets, he must be held to have stamped upon them the character of public streets: In re Pearl St., 111 Pa. 565; McCall v. Davis, 56 Pa. 431; Transue v. Sell, 105 Pa. 604.

*William A. Hayes,* with him *Joseph R. Rhodes,* for appellee. —The law does not presume a dedication where the street has been laid out by municipal action and remains unopened, and a description in a subsequent deed refers to it merely as a boundary: In re Opening of Brooklyn Street, 118 Pa. 640; Phillips v. St. Clair Incline Plane Co., 153 Pa. 230; Gamble v. City of Philadelphia, 162 Pa. 413; Phillips v. St. Clair Incline Plane Co., 166 Pa. 21.

Under the deed from Peters to Osterheldt, the grantee acquired a title to the middle of Preston street, subject only to the right of way in the adjoining property and the public: Paul v. Carver, 12 Harris, 207; Cox v. Freedley, 33 Pa. 124; Trutt v. Spotts, 87 Pa. 339; Transue v. Sell, 105 Pa. 604; Dobson v. Hohenadel, 148 Pa. 367.

The question as to whether or not any title remained in Peters, Osterheldt's grantor, can be considered as answered by Dobson v. Hohenadel, 148 Pa. 367.

In order that a dedication of a street to public uses may be complete, it is necessary that there should be an acceptance by the municipality : People v. Loehfelm, 2 Cent. Rep. 874 ; Patterson v. Harlan, 23 W. N. C. 230 ; Booraem v. North Hudson County Railway Co., 39 N. J. Eq. 465 ; In re Alley in Pittsburg, 104 Pa. 622 ; Com. v. Moorehead, 118 Pa. 344.

OPINION BY MR. JUSTICE MESTREZAT, March 26, 1900 :

The learned referee has found the facts of this case very fully in his first report. As the appellant has failed to print the testimony, and it is, therefore, not before us, the assignments, alleging error in the referee's findings of fact, must be overruled and dismissed. The view we take of the case requires us to consider but one of the assignments of error, to wit : The court erred in dismissing the defendant's first exception, which was as follows : The report of the referee is contrary to law.

We are unable to distinguish any material difference between the controlling facts of this case as found by the referee and those in the case of Quicksall et al. v. Philadelphia, 177 Pa. 301. If there is any difference, the facts of this case are stronger in favor of the city than those in the case cited. Fairmount avenue was open and used by the public for three or four years after its dedication, while the streets in the Quicksall case were laid out but not opened or used by the public. The learned court below thought the facts of the cases were similar and that the reasoning of the referee in his first report was correct, but held the act of May 9, 1889, was applicable to the facts of this case, and relieved the land within the streets from the servitude imposed upon it by the deed from Richard Peters to the plaintiffs' decedent. In holding this statute to apply to the facts of this case, we think there was error.

The Act of May 9, 1889, P. L. 173, 2 Purd. Dig. 1875, pl. 8, is as follows : " Any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons, in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out." The ordinance to open Fairmount avenue is dated

April 5, 1884. The city council, by this ordinance, directed that the department of surveys be authorized to revise plan No. 105, so as to place thereon Fairmount avenue from Mt. Vernon street to Lancaster avenue of the width of fifty feet. The avenue was laid out and opened the year the ordinance was passed. If the plaintiffs' decedent was injured or his rights invaded by the action of the city in appropriating his land for the use of the avenue, it was at this time, and his right of action, if he had any, accrued to him then. If under the law at that time, he was not entitled to recover, the subsequent statute, enacted in 1889, would not enable him to do so. There is nothing in this statute that would justify us in giving it a retroactive construction, so as to apply to streets opened and used prior to its passage.

Applying to the facts of this case the principles enunciated in the well considered opinion of Mr. Justice FELL in Quicksall et al. v. Philadelphia, supra, we are of opinion that the plaintiffs had no cause of action against the city. The effect of the deed from Peters to Osterheldt in 1849 was to dedicate to public use the strip of land of the grantor now included within the lines of Fairmount avenue and to stamp upon it the character of a public street. It gave the right to use this street not only to purchasers of lots laid out by Peters, but to all other persons who might desire to use the street. The dedication was irrevocable by either the grantor or those claiming title under him. Therefore, the deed of Peters to Osterheldt in 1849 operated as a relinquishment of all claims for damages for the use of the land within the line of Fairmount avenue for street purposes and the act of 1889, having no application, the plaintiffs here have no basis upon which to sustain a claim for damages.

The first assignment of error is sustained, the judgment of the court below is reversed, and judgment is directed to be entered on the first report of the referee in favor of the defendant, with costs.