## Horsham Township *v.* Weiner et al., Appellants.

36

Argued April 29, 1969. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Fredcrick L. Fuges,* with him *Robert K. Duffy,* and *MacCoy, Evans & Lewis,* for appellants.

*Norman R. Bradley,* with him *Raymond H. Schenck, Winston J. Churchill, Jr., Elmer L. Menges,* and *Saul, Ewing, Remick & Saul,* for appellees.

OPINION BY MR. JUSTICE POMEROY, June 27, 1969: This is an appeal by defendants from a decree in equity which, having impliedly held in favor of plaintiffs on the question of dedication of a sewer line, went on to dismiss defendant's counterclaim for reimbursement of the cost of the line. The plaintiffs in this case were a second class township and its sewer authority;[1] the defendants were a land developer (Weiner) and two corporations (Solida and Wilshire Manor) controlled by him (hereinafter collectively referred to as "appellants"). The complaint sought an order directing the appellants to dedicate to the Township of Horsham (Township) for the consideration of $1.00 a sewer line which Weiner had installed in connection with a subdivision which he was developing within the Township called "Oak Hill Farms". The answer denied that appellants had agreed to dedicate the sewer line, but averred that Solida had only agreed to dedicate a smaller sewer line originally contemplated. By way of counterclaim, appellants alleged that the Township had agreed to pay them the difference in cost between the smaller line and the larger one actually installed, and demanded payment of this difference. These pleadings were filed and the case became at issue in December, 1964.

On September 23, 1965, the Chancellor scheduled a hearing in the case to be held on September 28, 1965. On the latter date, an order was entered, apparently without testimony but after statements of counsel made in open court. The full text of the order is reproduced in the margin.[2] By this order,

---

[1] The Authority was not a party plaintiff at the time of filing the complaint. The record is silent as to how and when it became a party plaintiff, but this had apparently occurred by the time the plaintiffs' reply to defendants' counterclaim was filed.

[2] "ORDER

AND NOW, September 28, 1965, after the statements of counsel in open court with respect to the nature of the sewage system, the

"the Court finds that this system is a public system and that the Township or the Sewer Authority or both have the right to connect public sewers with any of the pipes shown on Plaintiff's Exhibit No. 2." Although there was no record of this hearing and nothing in the briefs as to what counsel said or what Plaintiff's Exhibit No. 2 was, it seems clear on the basis of the subsequent trial testimony and the Chancellor's adjudication that the sewer line which is the subject matter of this litigation is embraced in the phrase "public system" referred to in the order. No exceptions were taken to this order and no appeal was filed.

Some light is shed on the reason for the September 28, 1965, hearing by the statement of counsel for the Sewer Authority at the commencement of the trial in May, 1966. He there stated that the suit had been commenced because of the need to establish the right and title of the Sewer Authority to the line in question in order to connect it with the new sewer which the Authority was constructing under a State highway, which was then in process of being widened and repaved. This necessity apparently brought to a head the dispute between the parties and resulted in the suit. The urgency apparently became acute by Sep-

use of the system and the fact that it is tied in with a sewer meter under an agreement between Horsham Township and the Joint Sewer Authority of Upper Moreland and Hatboro and the fact that there are numerous houses already using this sewer and the Township charges and collects a rent for the use of the sewer, the Township pays the meter fee to Upper Moreland and Hatboro Sewer Authority, the Court finds that this system is a public system and that the Township or the Sewer Authority or both of them have the right to connect public sewers with any of the pipes shown on Plaintiff's Exhibit No. 2.

The Court directs that the Sewer Authority or the Township be allowed to make a connection with the 15-inch interceptor.

The finding of the Court in this respect is entirely without prejudice to the claims of the defendants for damages."

tember of 1965, and the unusual hearing of September 28, 1965, resulted.

The trial proper was held at two hearings in 1966, and an adjudication was filed on May 24, 1967. Apparently considering his order of September 28, 1965 as a final disposition of the question concerning dedication of the sewer line, the Chancellor did not further adjudicate that question. His adjudication stated: "This court has already ruled that a portion of the interceptor [sewer] line in question is a public facility. The only remaining question is whether Solida is entitled to damages."

As a result, no doubt, of the Chancellor's own consideration of the 1965 order as a final adjudication from which no timely appeal was taken, the appellees have filed a motion to quash that portion of this appeal which concerns the question of whether the sewer line had been dedicated.

The 1965 order is somewhat ambiguous in its implications. It is readily susceptible to construction as only an interlocutory, emergency order entered to prevent serious harm to the Township which might have resulted had it not been permitted to install the sewer line under the State road and connect that line with the sewer line here in question. There is no express finding or conclusion in the order of September 28, 1965 that a dedication had taken place; only by implication may such a conclusion be found in it. The order does not grant the relief for which appellees prayed, i.e., direction that the sewer line be dedicated. It is not framed as either an adjudication of any issue or as an equity decree. Finally, the order states that it is without prejudice to defendants' claim for damages, a statement which is inconsistent with a finding of dedication, since implicit in dedication is the relinquishment by the dedicator of any right to compensation from the governmental body involved. See

*Osterheldt v. Philadelphia*, 195 Pa. 355, 45 Atl. 923 (1900). For these reasons we hold that the order of September 28, 1965 lacked the requisite finality to be appealable until subsequently incorporated by reference into the Chancellor's final adjudication. From that adjudication appellants took timely exceptions, and from the dismissal of those exceptions appellants brought this timely appeal. The motion to quash will be denied.

From the record it is evident that the Chancellor's conclusion that the sewer line here involved was a public facility must have derived from a belief that dedication had taken place, or, at least that appellants had agreed to dedicate it by the written subdivision contract; there is, however, no formal finding of fact or conclusion of law to this effect. This appeal, therefore, presented two basic questions: (1) whether the Chancellor was correct in concluding that the sewer line had been dedicated to the Township or its Sewer Authority, and (2) whether the Chancellor was correct in his conclusions that the Township did not contract with the appellants to pay compensation for constructing this sewer line and, therefore, that appellants were not entitled to any damages.

"Dedication of land results when a landowner offers property for public use and it is accepted by or in behalf of the public . . . the dedication largely depends on the intention of the owner of the land." *Coffin v. Old Orchard Development Corp.*, 408 Pa. 487, 491, 186 A. 2d 906 (1962). "Dedication has a partial analogy to a contract and requires a consideration of the elements of offer and acceptance. The offer of dedication may be made in a number of ways. It may be made by the express declaration of the party or by acts, deed or plat. . . . Dedication rests upon the intention of the owners, and the circumstances must indicate an abandonment of the property to the com-

munity. [Citing cases.] No particular formality is requisite to constitute a dedication upon the part of the owner. Any act which clearly indicates an intention to dedicate is sufficient." *Vendetti Appeal,* 181 Pa. Superior Ct. 214, 220, 124 A. 2d 448 (1956), quoted with approval in *Coffin v. Old Orchard Development Corp., supra,* 408 Pa. at 491-92. With these principles of dedication before us, we will consider the findings of fact made by the Chancellor to determine whether the conclusion that a dedication had taken place is correct. As we have often held, ". . . the findings of fact of a trial judge, sitting without a jury, sustained by the court *en banc,* have the force and effect of a jury's verdict, and, if based on sufficient evidence, will not be disturbed on appeal."[3] *J. R. Christ Construction Co., Inc. v. Olevsky,* 426 Pa. 343, 347, 232 A. 2d 196 (1967). The following facts found by the Chancellor satisfy this test.

Prior to 1962, Solida became the owner of a 105-acre tract of land in Horsham Township. Weiner, as president of Solida, applied to the Township for permission to subdivide the tract and was advised that subdivision approval would be granted only upon the condition that Solida construct the sewer line in question of sufficient size (15 inches) to collect not only the flow from the proposed Solida development, but also from all other residences in the entire watershed. The size and location of this sewer line were specified by the Township so that it would correspond with the recommendations contained in a feasibility study for

---

[3] We assume that the dismissal of appellants' exceptions to the Chancellor's adjudication resulted from a hearing before the court *en banc,* as required by Pa. R.C.P. 1519, although this fact does not appear specifically in the record. Even were this assumption contrary to fact, due to a local rule of court, our standard of review would be the same. *Jacobson & Co. v. International Environment Corp.,* 427 Pa. 439, 444, 235 A. 2d 612 (1967).

the construction of a public sanitary sewer system which the Township had previously obtained. **Prior** to securing approval of its subdivision plan, Solida requested permission to construct the sewer line in question as an eight-inch line, rather than a fifteen-inch line.

The real crux of this controversy is what response was made to this request. Appellees contended that the Township refused the request; that appellants agreed to construct the fifteen-inch sewer line and dedicate it to the Township; and that appellants' subdivision was approved on condition that this be done. Appellants contended, on the other hand, that they agreed to dedicate only an eight-inch line and that they installed the fifteen-inch line instead, only after the appellees had undertaken to compensate them for the difference in cost. The Chancellor found the facts in favor of the appellees' version. We hold that these findings are supported by sufficient evidence and, therefore, will not be disturbed.

On April 30, 1963, Solida entered into a subdivision approval agreement with the Township for Section 1 of the Oak Hill Farms Development. Although this agreement was for only Section 1 of the proposed subdivision, it contained approval by the Township of a plan of Oak Hill Farms, which portrayed the entire subdivision. Paragraph 24 of this agreement stated: "The Applicant agrees that it shall execute and deliver to the Township an indenture or deed of easement . . . to cover and apply to all storm and sanitary sewer installations . . . as shall be shown or indicated upon the said approved plan or plans and not included within the street deed of dedication hereinabove referred to . . . in no event . . . later than two months from the date of this agreement." By reference to other portions of the agreement, the significance of the quoted paragraph becomes clear. The "street deed

of dedication" was to include all "improvements" under the streets; "improvements" were specifically defined to include sewer lines; and the sewer line here in question was the only one shown on the plan approved as part of the agreement which was not located under a street. Paragraph 24, therefore, obligated the appellants to deliver to the Township a deed of easement to the sewer line here in question within two months of the date of the agreement. As the Township approved the plan of Oak Hill Farms specifically ". . . for and in consideration of the things covenanted hereinbefore being done . . ." and, as no other consideration is mentioned in the agreement for this deed of easement, the Chancellor's finding that the Township had not agreed to pay any compensation for this deed is also supported by sufficient evidence. Since the public receives only an easement in any land dedicated to its use by common law dedication, the deed of easement called for by Paragraph 24 would be equivalent to a deed of dedication. See *Hoffman v. Pittsburgh,* 365 Pa. 386, 394, 75 A. 2d 649 (1950); *Versailles Twp. Authority v. McKeesport,* 171 Pa. Superior Ct. 377, 387, 90 A. 2d 581 (1952). That the sewer line for which appellants agreed to deliver this deed of easement was to be a fifteen-inch line rather than an eight-inch line is adequately established by the improvement cost estimate upon which the bonding requirement in the agreement was based. That estimate was based upon the utilization of quantities of fifteen-inch vitrious clay pipe as well as the eight-inch pipe, the latter being the size which was to be used for sewer lines other than the one here in question. Further, the plan of sewers of Oak Hill Farms prepared prior to the execution of the subdivision agreement and introduced into evidence by appellee without objection clearly shows this line as a fifteen-inch line.

On the basis of this evidence, the Chancellor found that appellants had agreed to dedicate this sewer line. Since the formal delivery of the deed had not taken place, the Chancellor had two choices. He could have ordered the delivery of the deed, or, following the maxim that equity treats as done that which ought to have been done and the principle that no particular formality is required to effect a dedication, he could have concluded that a dedication had taken place. He chose the latter course and we find no error in that decision. The necessary offer to dedicate the line was embodied in the subdivision agreement, and the Township's acceptance of that offer was evinced by integration of this sewer line into the public sanitary sewer system.

With regard to the second question presented by this appeal, the Chancellor specifically concluded that appellees had not contracted to pay appellants compensation for the difference in cost between an eight-inch sewer line and the fifteen-inch line actually installed. This conclusion is amply supported by the evidence discussed above. Further, Weiner's testimony that the Township supervisors had made some kind of oral agreement for such compensation was directly contradicted by the written minutes of the Board of Township Supervisors.

Appellants also argued here as they did unsuccessfully below that they are entitled to compensation on a quasi-contract theory. The simple answer to this contention is that the written agreement by which they agreed to install this sewer line as consideration for approval of their subdivision plan precluded any subsequent assertion of the right to additional compensation on this theory. *Wingert v. T. W. Phillips Gas & Oil Co.*, 398 Pa. 100, 157 A. 2d 92 (1959); *Third National Bank and Trust Company of Scranton*

*v. Lehigh Coal Co.,* 353 Pa. 185, 193, 44 A. 2d 571 (1945).

The decree is affirmed. Costs to be borne by appellants.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.