846 F.2d 916
 56 USLW 2720
 SMA LIFE ASSURANCE COMPANY
v.
PILLER, Mary Ann and Bammer, Martha, Mother and Natural
Guardian of Thomas H. Bammer, III and Samantha Bammer.
Appeal of Mary Ann PILLER.
 No. 87-1511.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 2, 1988.
Decided May 20, 1988.
Rehearing and Rehearing In Banc Denied June 16, 1988.
 
 William C. Wickkiser (argued), Allentown, Pa., for appellant.
 William J. Fries (Argued), Kranson and Fries, Allentown, Pa., for Martha Bammer, Mother and Natural Guardian of Thomas H. Bammer, III and Samantha Bammer.
 Before SLOVITER, STAPLETON, and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this interpleader action we are called upon to determine which party is entitled to the proceeds of a life insurance policy purchased after the separation but before the divorce of Thomas and Martha Bammer. We conclude that under Pennsylvania law the children of the decedent and not the named beneficiary are entitled to the proceeds of the policy in this case. We will, therefore, affirm the decision of the district court.
 
 I.
 
 2
 Martha Bammer and Thomas Bammer, Jr. were married in 1971. They had two children, Thomas III and Samantha. After several separations and reconciliations they were finally separated in November, 1981. In February, 1982 Mr. Bammer filed for divorce in the Court of Common Pleas of Lehigh County, Pennsylvania and Mrs. Bammer filed an answer and counterclaim. In March, 1984, Mr. Bammer filed an inventory and appraisement of property. That inventory listed three life insurance policies not at issue here, but did not include the policy which is in issue as it had not yet been purchased.
 
 
 3
 Pursuant to Pennsylvania law a Report of Master and Examiner was filed on March 11, 1985 which included the following recommendation:
 
 
 4
 Each party shall retain his or her respective life insurance policies except that the Plaintiff-Husband shall designate the minor children as irrevocable beneficiaries in equal shares, on his current policies of life insurance. Additionally, should the Plaintiff-Husband receive as an employee benefit any group life insurance plan from his present or future employers, he shall designate the minor children as irrevocable beneficiaries in equal shares.
 
 
 5
 (Emphasis added.)
 
 
 6
 Approximately four months later, on July 24, 1985 Mr. Bammer applied to SMA Life Assurance Company ("SMA") for a policy insuring his life and was issued policy No. L328,640 in the amount of $50,000.00. The beneficiary of this policy was Mary Ann Piller ("the beneficiary"), the woman with whom Bammer was living. It is undisputed that this policy's premium was paid for by Mr. Bammer and Ms. Piller.
 
 
 7
 On November 22, 1985 a Divorce Decree ending Mr. and Mrs. Bammer's marriage was entered in the Court of Common Pleas of Lehigh County, Pennsylvania. The decree provided, in regard to insurance policies, that:
 
 
 8
 [Mr. Bammer] shall designate his two minor children as irrevocable beneficiaries on his present policies of life insurance. However, [he] shall not be required to designate any specific beneficiary on any policy of insurance which he may obtain in the future.
 
 
 9
 (Emphasis added.) The court at that time had no knowledge of the existence of the SMA policy. Mr. Bammer took no appeal from the final decree of the Common Pleas Court.
 
 
 10
 Thomas Bammer, Jr. died on February 23, 1986 and SMA instituted an interpleader action on May 1, 1986 in the United States District Court for the Eastern District of Pennsylvania to determine the beneficiary of the policy. The district court granted SMA's motions for summary judgment and SMA was released from the case. The district court determined that the state court had the authority to order the beneficiary designation of this policy and that since the policy was a "present" (i.e., existing) policy at the time of the Divorce Decree, the proceeds of the policy should go to the children, Thomas III and Samantha. The district court also entered an order governing the management of the proceeds and income of the policy during the minority of the Bammer children. This appeal by Mary Ann Piller followed.
 
 
 11
 We conclude that (1) the relevant state statute conferred upon the Court of Common Pleas the power to require Mr. Bammer to designate his children as the beneficiaries of the disputed policy, (2) that court in fact exercised this power, and (3) the applicable state law accordingly requires us to regard Mr. Bammer's children as the beneficiaries of that policy.
 
 
 12
 We possess appellate jurisdiction pursuant to 28 U.S.C. Sec. 1291. As this is an issue of law, our scope of review is plenary.
 
 II.
 
 13
 Pennsylvania law, which governs this case, provides in general that the court shall equitably divide the "marital property" between the parties in such proportions as the court deems just. 23 Pa.Stat.Ann. Sec. 401(d) (Purdon 1987). "Marital property" is defined as all property acquired by either party during the marriage except:
 
 
 14
 (4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce.
 
 
 15
 23 Pa.Stat.Ann. Sec. 401(e)(4) (Purdon 1987). With respect to the specific subject of designating the beneficiaries of insurance policies, however, the Pennsylvania statute provides that:
 
 
 16
 [Life Insurance Policies]:
 
 
 17
 (i) The court may also direct the continued maintenance and beneficiary designations of existing policies insuring the life of either party. The court's power under this subsection shall extend only to policies originally purchased during the marriage and owned by or within the effective control of either party.
 
 
 18
 23 Pa.Stat.Ann. Sec. 401(i) (Purdon 1987).
 
 
 19
 Mary Ann Piller, the beneficiary designated on the policy before us, recognizes the importance of Sec. 401(i) but contends that it empowers the state court only to issue instructions which would maintain the status quo; it would not allow the court to order a change of designated beneficiary on a policy purchased during the marriage but after the couple's separation.
 
 
 20
 Our reading of the above-cited sections of the Pennsylvania Divorce Code leads us to conclude that the Pennsylvania legislature created a difference in treatment with regard to distribution of property acquired after separation but before divorce, when those assets are insurance policies. We find that the equitable powers of the state court encompass the power to direct a change in the beneficiary of an insurance policy when that contract was acquired at any time during the marriage. Therefore, the effect of the state court's Divorce Decree, by operation of law, made the Bammer children the beneficiaries of the policy at issue. Accordingly, we find that the district court properly directed that the children of Thomas Bammer be the recipients of the policy proceeds.
 
 III.
 
 21
 We recognize first that a court empowered to proceed in divorce actions acts as a court in equity. Lehmicke v. Lehmicke, 339 Pa.Super. 559, 489 A.2d 782 (1985). As such, a court must act not only to effectuate the purposes and the provisions of the Divorce Code itself, but must specifically protect the interests of the parties.
 
 
 22
 We note further that Sec. 401(i) must be read in its entirety, and construed as a whole. The first sentence, which indicates what the divorcing court is empowered to do, grants the court authority to direct the continued maintenance and beneficiary designations of existing life insurance policies. The court's authority may only control and thereby extend to policies purchased "during the marriage." Courts assessing similar provisions have concluded that such language authorizes a court to prevent a party from changing the beneficiary so that one originally so named is not deprived of that expectation. See Travelers Insurance Co. v. Johnson, 579 F.Supp. 1457 (D.N.J.1984).
 
 
 23
 This essentially injunctive power, however, does not readily translate into authority solely to maintain the status quo asserted by the appellant. Moreover, the status quo desired by the appellant is that as of the time of the Master's Recommendation. It is well established that the Master's Report serves in an advisory capacity and is not dispositive of the divorcing court's adjudication. Kleinfelter v. Kleinfelter, 317 Pa.Super. 282, 463 A.2d 1196 (1983).
 
 
 24
 Thus, the status quo to be maintained, even if we follow the appellant's reasoning, must be that of the policies acquired "during the marriage." While we recognize that the Bammer marriage may have effectively ceased to operate as such some time prior to the official Divorce Decree, we are compelled to note that the marriage was in legal existence until terminated by court order. There is, therefore, no reason to assume that the date of the Master's Report and Recommendation is in any way dispositive of the issue in this case.
 
 
 25
 We have searched the legislative history of the 1980 Pennsylvania Divorce Code for guidance as to the legislative intent relevant to the issue in this case. Although the legislative history is replete with concern over such issues as unilateral no-fault divorce and the speed with which a divorce may be obtained, there is little guidance on the matter of insurance policies. Our research yields the following statement by one of the bill's sponsors:
 
 
 26
 Upon the dissolution of a marriage the court has the power to equitably divide property according to certain standards that are listed in the bill. Marital property is defined as all property acquired after the date of marriage regardless of who holds title to it.
 
 
 27
 There are certain exceptions to that which are also in the bill; specifically, property that is brought to the marriage by either spouse is excluded. Property acquired by bequest or by gift is excluded. Property also may be excluded by antenuptial or postnuptial agreements.
 
 
 28
 Legislative Journal of Pennsylvania--House, at 1831 (September 18, 1979). Certainly the legislature meant to carve out specified assets from the blanket definition of marital property. The decision regarding insurance policies must therefore be construed as purposeful and intentional.
 
 
 29
 We find support, by analogy, for our position that a court has authority to direct policy beneficiaries for policies obtained during even lengthy separation and divorce proceedings in the provisions for alimony pendente lite. Pennsylvania law provides for such an award without reference to the length of time that such proceedings may consume. Our research discloses no cases indicating that there is a set period after which such awards are no longer available. We similarly find no time constraint in this case in relation to the fact that the insurance policy was procured several years after separation but during the legal existence of the marriage.
 
 
 30
 Finally, we note the explicit statutory objective of the Pennsylvania Divorce Code to "mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage." 23 Pa.Stat.Ann. Sec. 102(a)(4) (Purdon 1987). This objective was clearly a consideration for the Lehigh County Court when it directed that Mr. Bammer "shall designate his two minor children as irrevocable beneficiaries on his present policies of life insurance."
 
 
 31
 The court's decree is not ambiguous. On November 22, 1985, the court directed Mr. Bammer to designate his children as beneficiaries on all of his "present policies." Concededly, the policies at issue were "present policies" as of that date. Absent some alteration of the decree by the Lehigh County Court or a court having appellate jurisdiction to review its decrees, we are not at liberty to modify it, and, under the Pennsylvania cases, equity requires that we regard as having been done that which Mr. Bammer was ordered to do and could have done had he chosen. See Brunswick Corp. v. Ciaffoni, 432 Pa. 442, 248 A.2d 39, 40 (1968), cert. denied, 394 U.S. 997, 89 S.Ct. 1594, 22 L.Ed.2d 776 (1969); see also Pivirotto v. City of Pittsburgh, 515 Pa. 246, 528 A.2d 125, 127 (1987); Horsham Township v. Weiner, 435 Pa. 35, 255 A.2d 126, 130 (1969); Travelers Ins. Co. v. Johnson, 579 F.Supp. 1457, 1460-62 (D.N.J.1984) (recognizing that former spouse and children may have equitable interest in insurance policy proceeds superior to that of designated beneficiary) (collecting cases).
 
 
 32
 Although the disposition of the divorce proceedings in this case resulted in lengthy proceedings, we do not find an "unjust" situation due to that fact. Under the facts of this case, where the Lehigh County Court was not aware of the existence of the policy at issue, and where Mr. Bammer did not object to the court's decree although he was aware of the policy, we find no error in the district court's award of the proceeds of the life insurance policy to Mr. Bammer's children.
 
 IV.
 
 33
 Accordingly, we will affirm the judgment of the district court.
 
 
 34
 SLOVITER, Circuit Judge, dissenting.
 
 
 35
 I view this case as much more troubling than do my colleagues, and my analysis therefore proceeds along a different route.
 
 
 36
 I do not disagree with the majority that the Pennsylvania statute, 23 Pa.Stat.Ann. Sec. 401(i), can be read to authorize the Pennsylvania Common Pleas Court to require a party to a divorce proceeding to change the beneficiary of an existing policy of insurance. Appellant's argument that the statute only empowers the state court to maintain the status quo stems from too strained an interpretation of the statutory language to be persuasive. I would hesitate to construe the state statute in a manner that would preclude state courts from ever exercising their equitable power to decide, in an appropriate case, that a parent should be required to alter an existing policy beneficiary designation in favor of a minor child. Thus, were it clear from this record that the Court of Common Pleas of Lehigh County, after taking into account the relevant considerations relating to the affected parties, had decided that Thomas Bammer, Jr. should change the designation on the insurance policy in question in favor of his minor children, I would not dissent.
 
 
 37
 However, I see no basis in the record for the majority's conclusion that the Court of Common Pleas in fact exercised its power to require Mr. Bammer to designate his children as the beneficiaries of the SMA policy. That conclusion is inconsistent with the majority's recognition that the Common Pleas Court had no knowledge of the existence of the SMA policy.
 
 
 38
 It appears to me that the most plausible view of the record is that the recommendation of the Master, to require Mr. Bammer to designate his children as beneficiaries in his "current policies of life insurance," referred only to the three policies in existence at that time. Since the SMA policy had not been purchased at the time of the Master's report, the Master could not have intended his order to encompass that policy. When the Common Pleas Court, eight and one-half months later, adopted almost verbatim the Master's recommendation in this regard and directed Mr. Bammer to designate the children "on his present policies of life insurance," the court must have been referring to the same policies to which the Master referred because there is nothing in the court's order or the Master's recommendation to suggest that either contemplated any later acquired insurance.
 
 
 39
 Because there is no mechanism by which we can refer to the state court the factual question of what it intended by its order, I agree with the district court that the issue before the federal court in the interpleader action was who should receive the policy proceeds. However, I believe that the district court erred as a matter of law in attempting to predict what the Common Pleas Court would have ruled in this case. Our obligation to predict what the state courts would rule in diversity cases is limited to questions of state law. Here, the issue is not a legal one, but merely which of the contesting parties is entitled to the policy under the circumstances of this case.
 
 
 40
 I see nothing in the statute to support the majority's statement that "the applicable state law ... requires us to regard Mr. Bammer's children as the beneficiaries of [the SMA] policy," Maj. op. at 917 (emphasis added), and the majority offers no support for that statement. There is a vast difference between construing the statute to authorize the state court to require designation of the children as beneficiaries of the policy, which is what the authorities relied on by the majority support, and construing the statute to require the court to do so.
 
 
 41
 In this situation, it appears to me that the policy designation must control. Absent the overriding right of a state court in a divorce proceeding to order a different designation, I can see no reason not to follow the intent of the purchaser of an insurance policy with respect to the beneficiary of that policy, and here that intent is indisputable because Mary Ann Piller was named as the beneficiary.
 
 
 42
 The district court stated that including the SMA policy in the court's decree comports with the legislative intent. Although the legislature did express a policy to mitigate the harm to children caused by divorce, it also had a policy, made explicit by its definition of "marital property" to exclude other property acquired after separation until the date of the divorce, see 23 Pa.Stat.Ann. Sec. 401(e)(4), to enable parties who have separated to begin a new life. Thus, permitting Mr. Bammer to designate Ms. Piller, with whom he had been living following his final separation from his wife, as his beneficiary on a policy purchased four years after they had been living together certainly does not contravene any legislative policy.
 
 
 43
 Nor are the equities against Ms. Piller so strong as to require overriding Mr. Bammer's designation. Ms. Piller testified, and the majority concedes that it is undisputed, that the insurance premiums were paid out of the funds that she and Mr. Bammer pooled to pay their joint living expenses. The insurance policy was not purchased in contemplation of Mr. Bammer's death, since the record discloses that he died suddenly at the age of 43 while driving. Finally, the district court's reference to Mr. Bammer's failure to appeal the Lehigh County court's order as a factor militating against giving effect to his intent is unreasonable. There is no evidence to suggest that Mr. Bammer even suspected that the court's order applied to the subsequently purchased SMA policy. Mr. Bammer could reasonably have believed that the court's order merely adopted the Master's recommendation in this respect. In fact, had the court issued its decree within four months after it received the Master's recommendation, instead of inexplicably waiting eight and one-half months to do so, it would have had no power to affect the designation of the SMA policy beneficiary because its authority was limited to insurance policies then in existence, and the SMA policy was not purchased until four and one-half months after the Master's recommendation.
 
 
 44
 Under these circumstances, it appears to me that the district court abused its discretion in directing that Mr. Bammer's own beneficiary designation should be disregarded and the proceeds of the policy paid to others, even if those others were Mr. Bammer's minor children. I would therefore reverse and direct that the policy proceeds be awarded to the named beneficiary in accordance with Mr. Bammer's intent.