Cameron, to use, *v.* Eynon, Appellant.

Argued November 29, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frederick J. Scott,* with him *Clarence J. Wing,* for appellant.

*Harry C. Hubler,* for appellee.

OPINION BY MR. JUSTICE STERN, January 9, 1939:

This is an appeal from the overruling of defendant's motion for judgment n. o. v. There was no application by him for a new trial, but the record is so unsatisfactory, and evidences such misconception by the parties of the substantive and procedural law properly applicable to the situation, that in our opinion it is necessary that the case be re-tried so that its structure may be rebuilt from the foundations.

All the evidence at the trial was given by plaintiff and according to his testimony the facts were as follows: Plaintiff for years conducted in Scranton a retail dry goods store which he leased from defendant. In May, 1935, under a previous lease, plaintiff had fallen into arrears in the rent, whereupon defendant made a distraint and purchased the goods in the store, but, in August of the same year, having satisfied his rent claim, returned the remaining merchandise to plaintiff who thereafter conducted the business as before. During the latter part of 1936 plaintiff again defaulted in payment

of the rent, and, on February 1, 1937, owed defendant $422.43. He was also at that time indebted to a bank in the sum of $3,200. Defendant said to plaintiff: "The bank is going to close you out but I am going to get even with them. . . . I am going to do it myself." He further said: "That will be for your protection and mine."[1] He enjoined secrecy upon plaintiff, and the latter, assuming from his previous experience that what defendant proposed was to go through the same process again, and that "protection" meant that he was to receive the business back from defendant after the rent claim had been liquidated, coöperated with defendant in the execution of the plan. Accordingly, defendant, in the early part of February, 1937, distrained upon all the merchandise and fixtures in the store, to collect the sum of $742.43, representing the rent due to February 1st, together with $200 for two additional months, and $100 to reimburse him for the cost of painting the store.[2] On the day of the sale a constable came with defendant's lawyer and they went with plaintiff into a corner of the store where no one could overhear the proceedings. In low tones the lawyer made a bid of $400 and the constable told plaintiff to bid $425, which he did, whereupon the lawyer bid $450 and the goods were sold to defendant. There had not been any advertising and no one else knew that the sale was being conducted. The value of the fixtures and merchandise thus sold was $9,655.54. It was agreed that defendant was to employ plaintiff at $15 a week. Defendant told plaintiff it would take two to three years before he could get the business back again. He announced his willingness, if plaintiff found a purchaser, to sell the goods in bulk, take out what was due

---

[1] Whether there was contemplated any ultimate fraud upon the bank is not entirely clear from the testimony, but no question in that regard was raised in the case.

[2] Plaintiff has not raised any question as to the amount, $742.43, for which distraint was made.

him and turn the balance over to plaintiff; subsequently plaintiff received an offer of $4,000 for the merchandise, but was himself unwilling to sell at that price. Meanwhile defendant kept buying new merchandise, which he paid for with his own money. Out of the receipts from the sale of goods in the store plaintiff paid the wages of the employees and turned the net proceeds over to defendant. In the latter part of August defendant said to plaintiff, "I have made up my mind that you are not going to get this business back," and on October 4th ordered plaintiff out of the establishment. A month later plaintiff brought the present action of assumpsit.

In his original statement of claim plaintiff based his action upon a "quasi-contractual relationship" between the parties. A quasi contract arises where the law imposes a duty upon a person, not because of any express or implied promise on his part to perform it, but even in spite of any intention he might have to the contrary. A quasi contract, which is a *fictional* contract, is not to be confused with a contract implied in fact, which is an *actual* contract, and which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances. In the present case, plaintiff's cause of action really rested upon a contract implied in fact, according to which plaintiff agreed to permit the constable's sale to be effected privately and without competitive bidding, and to allow defendant to buy in nearly $10,000 worth of plaintiff's property for $450 and thereafter conduct the business as his own until he should have recovered thereout the amount due him for the rent; defendant, on the other hand, agreed that when he should have obtained from the business, after payment of all his expenditures, a sum sufficient to recoup him for his rent claim, (a period estimated at from two to three years), he would return the business to plaintiff in the same manner as he had done on the former occasion in 1935,

and meanwhile would employ plaintiff at a wage of $15 per week.

Under the contract thus outlined no cause of action would ordinarily accrue to plaintiff unless and until defendant, having realized his rent claim out of the operations of the business, should refuse to restore the business to plaintiff, and so far from there being any proof in the testimony that defendant had so recouped himself, it appeared that the venture had been unsuccessful and that defendant had lost additional moneys. But when defendant discharged plaintiff and stated he was not going to return the business to him at all, he breached the contract by anticipatory repudiation, and plaintiff could thereupon, at his option, sue immediately for damages.

This brings us to the question as to which the greatest confusion seems to have existed in the case, namely, the nature of the relief and the amount of the recovery to which plaintiff was entitled. Had he ignored the anticipatory breach and insisted upon the ultimate performance of the agreement, he could, when the proper time should arrive, ask for an accounting under section 11 of the Practice Act of 1915, P. L. 483; the question would then be whether the net receipts of the business had enabled defendant to recover his rent, and if so plaintiff would thereupon be entitled to receive the then existing net assets of the business or their value. Suing, however, upon defendant's anticipatory renunciation of his contractual obligation, the only provable and therefore the only practical measure of plaintiff's damage would be the value of the fixtures and merchandise taken over by defendant at the constable's sale less the amount of the rent claim due him.[3] The original statement of claim was framed for the recovery of such loss, but during the trial the theory of the action was alternately

---

[3] The rules as to the measure of damages for anticipatory breach in Restatement, Contracts, sec. 338, do not admit of application to such a situation as that in the present case.

shifted from one position to the other, testimony being taken both in regard to the value of the goods sold at the constable's sale and the receipts and expenditures of the operation of the business by defendant. The court instructed the jury not to bring in a verdict for any amount, but merely to answer the question, "Is the defendant liable to account to the plaintiff for any amount over the net expenses he has incurred in the purchase and operation of the plaintiff's store prior to October 3, 1937?" The jury answered "Yes," and also brought in a general verdict in favor of plaintiff. Defendant filed a motion for judgment n. o. v. Thereafter plaintiff filed a petition to amend his statement so as to change his claim from the amount for which suit was originally brought to a claim for an accounting as found by the jury. The court discharged defendant's motion for judgment n. o. v. and at the same time allowed plaintiff's amendment. Final judgment was entered for plaintiff —presumably (although not apparently so specified) a judgment quod computet. In the oral argument before this court plaintiff abandoned the claim for an accounting of defendant's operation of the business, and reverted to a claim for the value of the fixtures and goods bought by defendant in the constable's sale, and in his printed brief he states, ambiguously, that his action is "assumpsit *on a quasi contract* to obtain an *accounting for the value of certain goods and chattels* sold by the defendant on proceedings in distraint for rent."

It should be evident from what has been said that the judgment entered in the court below cannot be allowed to stand. Plaintiff is not entitled at this time to an accounting for defendant's receipts from the business; such accounting would not be due under the agreement until defendant had realized his rent claim, and the only evidence on that point indicates that such time is, at best, far in the future. What plaintiff can recover in his present suit is the excess of the actual value of the merchandise and fixtures acquired by defendant at the

constable's sale over the amount of the accrued rent claim, and the establishing of that value does not require any accounting by defendant but evidence to be produced by plaintiff, weighed by a jury, and determined by their verdict. It may be said in passing that at the next trial plaintiff should be obliged to give more definite and satisfactory evidence of such value than that offered by him on the present record.

The judgment is reversed; defendant's motion for judgment n. o. v. is converted into a rule for a new trial, and as such is herewith made absolute.