Baker, Appellant, *v.* Brennan.

Argued April 27, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Gilbert J. Helwig,* with him *Carmen V. Marinaro, Richard C. Bremer,* and *Reed, Smith, Shaw & McClay,* for appellant.

*Lee C. McCandless,* with him *McCandless & McCandless,* for appellees.

OPINION BY MR. JUSTICE JONES, October 13, 1965:

This appeal lies from a decree entered in an equity action, a decree which, by sustaining preliminary objections and dismissing the complaint, terminated the action.

On December 10, 1938, Orville D. Baker entered into a written agreement with Raynard Christianson under the terms of which the latter gave Baker an option to purchase a 70 acre tract of land and improvements thereon situated in Butler County, a tract owned by Raynard Christianson and six other persons (Christiansons). Baker agreed to pay "a sum to be agreed upon" when the option was exercised which sum was not to be in excess of $30,000. *No time for the exercise of this option was provided.* Raynard Christianson signed this agreement as an individual, but, written in long hand at the beginning of the agreement and interlined on the original agreement after Raynard Christianson's name, the following statement appeared: "In his own right and as agent for the other owners".

Prior to the execution of this option agreement, Baker, by virtue of two leases made in 1937, was in possession of this tract of land upon which he operated a restaurant and public golf course known as

"Oak Hills Public Golf Course". Baker still remains in possession of the land and improvements thereon.[1]

From Baker's pleadings, it appears that, from the time of the option agreement until the institution of this action, the following took place: (1) Christiansons requested Baker to exercise the option on December 30, 1940;[2] (2) Baker and Christiansons entered into three new leases for the property—December 31, 1941, March 8, 1946 and December 23, 1948—in none of which leases was any reference made to the option agreement; (3) on June 28, 1948, Baker notified Raynard Christianson of his desire to exercise the option to purchase and to pay for the property $30,000.

On October 2, 1951—approximately three and one-fourth years after the alleged exercise of the option— Baker instituted this equity action in the Court of Common Pleas of Butler County against Christiansons seeking specific performance of the option agreement and "such other and further relief" as justified under the circumstances. On November 13, 1951, Christiansons filed preliminary objections which raised the following defenses: (a) the Statute of Frauds barred the action since the complaint did not aver that Raynard Christianson's authority to act as agent for Christiansons was in writing; (b) laches; (c) that the option had expired before its exercise, a reasonable time having elapsed since the grant of the option. Approximately five and two-thirds years after filing of the preliminary objections, Baker filed an amended complaint averring, inter alia, that Christiansons had ratified Raynard Christianson's action in executing leases and the option agreement "by accepting the rent-

---

[1] Apparently, one Francis Walsh in later years has acquired a lease of the property from Christiansons, a lease which is in conflict with Baker's alleged rights. The validity of that lease is the subject of a separate equity action in Butler County.

[2] In their Answer, Christiansons deny making such request.

als paid under the terms of the [leases] and subsequently on Dec. 30, 1940, requested [Baker] to exercise the said option." On August 2, 1957, preliminary objections were filed by Christiansons. These objections, in addition to raising the defenses raised to the original complaint, averred (a) that there was no integration of the option agreement with the various leases and (b) that there could not be specific performance against Raynard Christianson unless it could be ordered against all the Christiansons.

The preliminary objections were heard by President Judge SHUMAKER. After argument, on September 23, 1958, President Judge SHUMAKER overruled the preliminary objections stating, however, that the court did not pass on the merits of Christiansons' position taken in the objections but considered that the matters raised were "matters of defense" to be disposed of "in disposing of the entire case on its merits".[3] Christiansons then answered the amended complaint.

Over five and one-third years thereafter, Baker filed another amended complaint[4] wherein, for the first time, it was averred that, in reliance on the option agreement and the various leases, Baker had taken and maintained continuous possession of the property and had expended $25,000 on permanent improvements.[5] Once again, Christiansons filed preliminary objections. These objections were heard by Judge KIESTER. After argument on August 4, 1964, Judge KIESTER entered a

---

[3] From a study of President Judge SHUMAKER's opinion it is evident he envisaged a hearing was necessary at which facts would be developed to evaluate the merit of Christiansons' position set forth in the preliminary objections.

[4] Christiansons contend that this amended complaint introduced a new cause of action and that, in violation of Pa. R.C.P. 1033, applicable to equity actions under Pa. R.C.P. 1501, the new complaint was filed without their consent or that of the court.

[5] A natural inquiry is whether such improvements were not made necessary under the provisions of the lease.

decree sustaining certain of the preliminary objections and dismissing Baker's complaint. From that decree this appeal was taken.

The rationale of Judge KIESTER's decree is: (1) that to permit an amendment of Baker's complaint to aver the theory of possession and substantial improvements would constitute the introduction of an entirely new cause of action and to grant such amendment "after nearly thirteen years, with the delay, the death and change of counsel for [Christiansons] and the possibility of other prejudicial factors" would be an abuse of judicial discretion, Baker having been guilty of laches in pleading this new cause of action; (2) in the absence of a provision for a specific time in the option agreement within which the option was to be exercised by Baker, the exercise of the option must take place "within a reasonable time" and the fact, *established by Baker's pleading,* that more than nine and one-half years elapsed between the grant of and the alleged exercise of the option clearly indicates that Baker did not act "within a reasonable time" and, therefore, by June 28, 1948, the option had expired and could not be exercised; (3) that, even if the option had not expired prior to June 28, 1948, and, even if Baker did exercise the option on such date, the failure of Baker to take any legal action to enforce his rights under the option agreement for nearly three years after renewal of the leases constituted an abandonment of Baker's cause of action.[6]

Baker's counsel earnestly and ably contends that summary judgment should not have been entered on

---

[6] It should be noted that the court took the position that the *nature* of Raynard Christianson's authority to act on behalf of all the Christiansons, i.e., whether the authority was oral or in writing, was evidentiary and resolution of that question should await a hearing.

the instant pleading without evidence as to all the circumstances.[7]

It is well settled that a summary judgment should be entered on the pleadings only where it is clear that under no state of facts can a plaintiff make out a case on which he may recover *(Miami National Bank v. Willens,* 410 Pa. 505, 190 A. 2d 438; *Heilwood Fuel Co. v. Manor Real Estate Co.,* 405 Pa. 319, 175 A. 2d 880) and that preliminary objections the end result of which would be the dismissal of a cause of action should be sustained only in cases which are clear and free from doubt *(Schrader v. Heath,* 408 Pa. 79, 182 A. 2d 696).

In support of his claim that the delay or laches can be refuted, Baker points to some language in the opinion of President Judge SHUMAKER which indicated that the delay was harming neither Baker nor Christiansons and that neither party was pressing for an adjudication of their rights. What President Judge SHUMAKER was excusing, if at all, was delay *after* institution of the action, whereas the delay upon which Judge KIESTER bottomed his ruling was Baker's delay *prior* to the institution of the action in asserting his rights both to exercise the option and to enforce exercise of the option. Baker can find no solace on this score in President Judge SHUMAKER's opinion.

Determination of the propriety of the decree entered in the court below requires our examination of the well-averred facts which Baker has set forth in his complaint. Insofar as presently pertinent, Baker avers:

---

[7] We agree with the position taken by Baker's counsel that the court below did not dismiss the complaint because of noncompliance with the Statute of Frauds and we further agree, under the posture of the case presented by the instant record, that the court below was correct in declining to enter a summary judgment on that ground. We further note that Baker's counsel does not contest the validity of the ruling of the court below that the amendment seeking to introduce a new cause of action should not be permitted.

(1) the grant of an option to purchase the property on *December 10, 1938;* (2) the exercise of such option on *June 28, 1948;* (3) an execution of two leases for the property—October 1 and October 10, 1938—"as part of the same transaction" as the execution of the grant of the option; (4) renewals of these leases on December 31, 1941, March 8, 1946, and *December 23, 1948;* (5) a request by the optionors addressed to the optionees on *December 30, 1940* to exercise the option. From a scrutiny of such averments and of the leases and the option agreement, attached to the complaint, certain conclusions are inevitable: (1) there was absolutely *no integration* of the 1938 leases or any subsequent lease with the option agreement; (2) there is a complete absence of any *fixed* time within which Baker was required to exercise the option to purchase; (3) even if the optionors did request Baker to exercise the option, Baker *delayed for 7-1/2* years subsequent to such request before exercising such option; (4) Baker *delayed for* over 9-½ years in exercising the option after its grant; (5) that, even after having exercised the option, Baker, six months thereafter, entered into a new lease for the property.

In the absence of any time designated for the exercise of an option to purchase land, the option must be exercised within a reasonable time considering all the circumstances: *Barr v. Deiter,* 190 Pa. Superior Ct. 454, 460, 154 A. 2d 290. Baker urges that what is a reasonable time is a question of fact to be decided only after a hearing. While that may be so under some circumstances, yet where, as in the case at bar, accepting *as facts* Baker's own averments, it is inescapably clear from the pleadings that the option to purchase was not exercised in a reasonable time, such question may and should be resolved on the pleadings. Baker's own pleading of facts indicates beyond any question that he did not, with reasonable timeliness, exercise

the rights granted him under the option agreement[8] and that such option had terminated by the time he sought to exercise it.

In view of the conclusion reached we do not reach the question of abandonment.

We have carefully examined this record and the able briefs of counsel for both parties. From such examination we are satisfied that the court below acted with propriety in entering its decree dismissing this complaint and that the pleadings unmistakably warranted the entry of such decree.

Decree affirmed. Each party to bear own costs.

Mr. Justice COHEN and Mr. Justice ROBERTS dissent.

---

[8] *Gulf Oil Corp. v. Faller*, 399 Pa. 607, 161 A. 2d 6, relied on by Baker, is presently inapposite. In *Gulf Oil Corp.*, the option to purchase was integrated in the lease for a term (with renewals) of twenty years, our Court found no "express language limiting or restricting for any reason the general right in [*Gulf Oil Corp.*] to exercise the option" and, clearly, *Gulf Oil Corp.* even though seventeen years had elapsed since the grant of the option, had the right to exercise the option. In the case at bar, Baker, by reason of the terms of the option agreement, had only a "reasonable time" within which to exercise the option and he failed to do so. In *Gulf Oil Corp.*, the question of what constituted a "reasonable time" was *not at issue;* *Gulf* had a *fixed time*, i.e., within the life of the lease, or renewals thereof, expressly given *Gulf* within which to exercise the option agreement, and the option agreement was integrated in the lease.