Schott, Appellant, *v.* Westinghouse Electric Corporation.

Argued March 21, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Lloyd F. Engle, Jr.*, with him *Wilner, Wilner & Kuhn*, for appellant.

*Frank L. Seamans*, with him *William B. Mallin*, *Wm. Alvah Stewart*, and *Eckert, Seamans & Cherin*, for appellee.

OPINION BY MR. JUSTICE POMEROY, November 28, 1969:

During the period 1962 to 1965 (the relevant times for the purpose of this case), there was in effect at Westinghouse Electric Corporation (hereinafter "Company") a formalized suggestion program under which its employees were invited to submit to the Company any suggestions they might have for increasing production and reducing costs. The question in this case is whether the Company may have become contractually obligated to one of its employees, appellant herein, by virtue of the actions of both parties pursuant to the program. This appeal is from the sustaining of preliminary objections by the Company in the nature of a demurrer. Consequently, the facts before us are confined to the appellant's complaint, as amended, and the demurrer admits for present purposes every well pleaded material fact set forth in the pleading to which it is addressed, as well as the inferences reasonably deducible therefrom. *Eden Roc Country Club v. Mullhauser*, 416 Pa. 61, 204 A. 2d 465 (1964); *Woodyatt v. Bank of Old York Road*, 408 Pa. 257, 182 A. 2d 500 (1962); *Mistick v. Cammack*, 397 Pa. 296, 154 A. 2d 588 (1959). See Goodrich-Amram §1017(b)-11.

The terms of the suggestion program are set forth in the documentary exhibits attached to the complaint. In pertinent part, the basic form of the suggestion system provides as follows:

"With a view toward increasing production and reducing costs, thereby promoting employment, the West-

inghouse Electric Corporation encourages practical suggestions from employes.

"Cash awards ranging from a minimum of $5.00 to a maximum of $15,000 will be paid for each suggestion adopted. . .

"Suggestions must be submitted on this form. . . All suggestions will be passed upon as soon as possible, and suggesters will be notified as to the action taken . . ."

Space was provided for the statement of the employee's suggestion. Beneath that space and immediately above the signature line where the employee-suggester was to sign was the following stipulation:

"In submitting this suggestion, I agree that the decision of the local Suggestion Committee on all matters pertaining to this suggestion, my eligibility for an award, and the amount of award, if any, will be final. I further understand that if this suggestion is rejected, I have the right to reopen it within 12 months from the date of rejection, or to re-submit it as a new suggestion at any time thereafter.

"NOTE: If adopted; Minimum Award—$5.00
                      Maximum Award—$15,000"

In May, 1962, the appellant, an employee of the Company, submitted a suggestion that certain panels used on circuit breakers manufactured by the Company be made from fabricated heavy gauge steel rather than the material then used, cast aluminum. Appellant submitted the suggestion, as required, on the standard form with its stipulation that the decision of the Suggestion Committee should be determinative as to all matters. Thereafter, the Suggestion Committee informed the appellant in writing that his suggestion had been rejected (Exhibit C to the complaint). This communication stated that a change of the panels would necessitate large expenditures for design work, the building of models, and laboratory tests, and that these

costs would more than offset any savings which might be realized from the proposed change. Appellant was informed that "If breaker re-design is started for other reasons in the future, this idea will be considered." He was also advised, in the same communication, that his suggestion could be reopened within a year or resubmitted after a year.

In September, 1963, appellant resubmitted his suggestion, again using the Company's prescribed form for his submission; in January, 1964, he was informed that the suggestion had again been rejected (Exhibit E to the complaint). In explaining its action, the Suggestion Committee cited its original reasons, adverted to further problems in the design of the panels resulting from the need to use nonmagnetic materials in the panel, and mentioned that redesign of the panels to include partial nonmagnetic materials was being undertaken as part of an independent cost reduction study.

At this point in the narrative, resort must be had to the complaint itself, as distinguished from the documentary exhibits. The complaint averred, in paragraph 8, that thereafter, probably in 1964, the Company "did adopt and utilize" the recommendations advanced by the suggestion, and the plaintiff (appellant) thereupon requested reconsideration of his suggestion. The Company apparently made such a review and communicated the results thereof to appellant in a letter of May, 1965 (Exhibit F to the complaint). This letter adverts to the Company's "application of the same basic idea [as that contained in appellant's suggestion] in a redesign" and confirms the Company's view that the reason given for the initial rejection of the suggestion in 1962 had been valid at that time. It further states the opinion of the writer (General Manager of the Switchgear Division) that "the action taken [by the Company] in 1964 changing the back plate was the

result of independent action taken without knowledge of your [appellant's] suggestion," and reaffirmed the Company's refusal to make an award to appellant.

In November, 1966, appellant filed a complaint which averred that the Company had adopted the appellant's suggestion and prayed for an accounting as to the Company's savings therefrom, and damages equal to 20% thereof. The Company filed preliminary objections, on the ground that the complaint did not set forth a valid claim against the Company on which relief could be granted. In support of this conclusion the objections cited the stipulation that "the decision of the Local Suggestion Committee on all matters pertaining to this suggestion . . . will be final."[1] The lower court (Smith, Jr., J.), in sustaining the Company's objections, found that the suggestion program of the Company was an invitation to its employes to make an offer; that the offer of the appellant was by its terms subject to acceptance or rejection by the Company through its Committees; and that the offer had been duly and consistently rejected by the Company. The court further held: "Plaintiff is bound by the statement to which he agreed that the decision of the Suggestion Committee will be final on all matters pertaining to his suggestion and his eligibility for an award unless there is fraud or deceit practiced by or an unjust enrichment enuring to the defendant and no such allegations are made in this case." Finding that no enforceable contract had been pleaded by appellant, the court sustained defendant's preliminary objections and granted plaintiff leave to amend his complaint.

---

[1] There was also a question both on objections and in this appeal as to whether the contract alleged was sufficiently specific in its terms to be a basis for the claim of damages since determination of the amount of the award was itself left to the discretion of the Suggestion Committee. In view of our disposition of the case, it is not necessary to reach the question of damages.

Thereafter, appellant filed an amended complaint seeking damages both under a theory of contract and under a theory sounding in unjust enrichment, properly set forth in a separate count. The amended complaint alleged no new facts but charged appropriation of plaintiff's valuable idea.[2]

The Company again filed preliminary objections, renewing its position that appellant had failed to state a cause of action sounding in contract and further asserting that no cause of action based on unjust enrichment had been set forth. The lower court (McKenna, Jr., J.) found that the amended complaint added no substantial allegation to the original complaint. Holding that appellant was bound by the adverse determinations of the Suggestion Committee, the court below sustained the objections and dismissed the amended complaint. The court did not specifically consider the newly pleaded second cause of action.

The present appeal is from the order of the lower court dismissing appellant's amended complaint. Appellant argues that he was entitled to recover the value of his suggestion, either under a theory of performance

---

[2] Paragraphs 16, 17 and 18, stating the second cause of action, read as follows:

"16. Plaintiff was not required to submit his suggestion to Defendant, but was induced to do so by Defendant's promise that 'Cash awards ranging from a minimum of $5.00 to a maximum of $15,000 will be paid for each suggestion adopted.'

"17. Defendant has appropriated to its own use and benefit the valuable idea submitted to it by Plaintiff at Defendant's request that such suggestions be thus submitted, and upon Defendant's promise of payment for the use of such suggestions.

"18. By reason of Defendant's appropriation of Plaintiff's suggestion, Plaintiff claims the full value of his suggestion as was realized by Defendant, based upon the saving realized by Defendant due to its adoption and utilization of the ideas and recommendations advanced by Plaintiff in his suggestion."

of a unilateral contract or under a theory of unjust enrichment.[3]

We agree with the lower court that the appellant cannot recover under a contract theory, but under the facts averred we believe the appellant has stated a cause of action in unjust enrichment. Accordingly, we are obliged to reverse and remand.

# I

As we view the first cause of action, we need not decide whether the purported contract was unilateral or bilateral in nature.[4] Whichever interpretation is adopted, it is clear that appellant agreed to abide by the decision of the Suggestion Committee on "all matters" (including the acceptableness of the suggestion itself). The Committee rejected the suggestion, and that rejection bars the appellant's recovery under his first cause of action, not because appellant was thereby made ineligible for an award under a valid con-

---

[3] Appellant has not argued in either of his complaints or in the present appeal that the Company has acted fraudulently or in bad faith so as to release him from his agreement to abide by the decision of the Suggestion Committee. See *Olschiefsky v. Times Publishing Co.*, 23 Pa. D. & C. 2d 73, 77 (C.P. Erie Co. 1959). Nor does appellant question the reality of his assent to the clause vesting all decisions in the Suggestion Committee; there is no argument that this is a contract of adhesion which, because of the social importance of the type of contract involved or any monopoly position of the Company, should be judicially reformed in favor of the appellant. See Kessler, "Contracts of Adhesion—Some Thoughts About Freedom of Contract," 43 Colum. L. Rev. 629 (1943).

[4] We note in passing that the most recent draft of the *Restatement* has eliminated the unilateral-bilateral distinction adverted to here. *Restatement (Second) of Contracts*, Reporter's Note §12 (Tent. Draft No. 1, 1964). We have here followed the traditional distinction and nomenclature, as did the lower court and the parties in their briefs.

tract with the Company, but rather because, in view of the Committee's action, no contract existed between the parties.

"Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Restatement (Second) of Contracts,* §52(1) (Tent. Draft No. 1, 1964). Acceptance of an offer is of course essential to the making of a contract.

If, as appellant argues, the Company's suggestion program constituted an offer of a unilateral contract, appellant's "acceptance" necessarily incorporated, and was determined by, the terms and conditions of that program. By its express terms, the Company's offer was a request, not merely for a suggestion, but for a suggestion its own committee acting in good faith would deem acceptable. Even if it is assumed that an act so conditioned could form a valid unilateral contract, appellant's suggestion on the face of this record was not such an act as the Company required. Consequently, the act required of appellant to effect a unilateral contract was not performed.

If, on the other hand, the interpretation of the lower court is accepted and the suggestion of the appellant is treated as an offer in response to the Company's invitation, it is clear that the Company, so long as it acted in good faith, was entitled to reject the offer and decline to compensate appellant for the rejected suggestion. The Company did not undertake to reward employees for all suggestions, but only for those it deemed acceptable by the procedure set forth in its submission form. Here no acceptable suggestion was submitted, and there was therefore no contract upon which appellant could recover.

We conclude that however the writings of the parties are interpreted in the dealings between Company and employee, there was never an offer and an ac-

ceptance of that offer on its own terms. Appellant's first cause of action predicates a valid, express contract and a breach thereof by appellee. The amended complaint, however, like the original one, fails to set forth a contract. The demurrer as to the first count was properly sustained.

## II

Appellant's alternative position is that, relying on the Company's promise in the suggestion invitation, he submitted a valuable idea to the Company in hope of securing a monetary award therefor; that the Company "adopted" or appropriated the idea to its own use and benefit; that the Company has refused to make payment to appellant therefor in accordance with the terms of the suggestion system; that in consequence appellant is entitled to the full value of the saving realized by the Company from its use of his idea. The Company responds that these are but conclusory averments and that no cause of action is set forth.

Before considering the law applicable to this phase of the case, we note that the parties have engaged in a certain amount of semantic sparring over the use of the term "adopted". The word seems innocent enough, but is perhaps susceptible to variant meanings in this situation. The Company refers repeatedly to the terms of the suggestion program, and states that "adopted" means, and means only, affirmative and express verbal adoption by the Suggestion Committee acting on behalf of the Company; since the suggestion of appellant was explicitly rejected, it could not be adopted. In the context of the suggestion program, this seems irrefutable. Appellant, however, argues that the Company, at its operating level and not through the Suggestion Committee, in fact adopted his suggestion by incorporating it physically into the Company's redesigned cir-

cuit breakers and putting it to practical and operational use. This is a meaning which lies outside the suggestion program, although the suggestion itself derived from that program. "Adopted" in the Company's use of the term would be essential to recovery under the contract theory of count I; "adopted" in the appellant's use of the term would be essential to recovery under the quasi-contract theory of count II. The word "appropriate" is probably preferable to express the appellant's meaning, and the second count does indeed use that term.

Returning to the applicable law, we note that this Court has found the quasi-contractual doctrine of unjust enrichment inapplicable when the relationship between parties is founded on a written agreement or express contract. *Third National Bank & Trust Co. of Scranton v. Lehigh Valley Coal Company*, 353 Pa. 185, 193, 44 A. 2d 571 (1945). See also *Horsham Township v. Weiner*, 435 Pa. 35, 255 A. 2d 126 (1969) and *Wingert v. T. W. Phillips Gas & Oil Co.*, 398 Pa. 100, 105, 157 A. 2d 92 (1959). But in the present case, having found that no legal contract bound the parties, it would be manifestly unjust to fail to consider appellant's claim on the ground that there might have been a contract or that the parties had attempted to enter into a contract.

Quasi-contracts, or contracts implied in law, are to be distinguished from express contracts or contracts implied in fact. "[U]nlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Restatement (Second) of Contracts*, §5, comment *b* at 24 (Tent. Draft No. 1, 1964). See also Corbin, *Contracts*, §19 (1950); *Cameron, to use v. Eynon*, 332 Pa. 529, 3 A. 2d 423 (1939); and *Hertzog v. Hertzog*, 29 Pa. 465 (1857). Quasi-contracts may

be found in the absence of any expression of assent by the party to be charged and may indeed be found in spite of the party's contrary intention. *Cameron, to use v. Eynon, supra*; *DeGasperi v. Valicenti,* 198 Pa. Superior Ct. 455, 181 A. 2d 862 (1962); Williston, *Contracts,* §§3, 3A (3d Ed. 1957); and Corbin, *supra,* at p. 27. Consequently, the failure of the Company's Suggestion Committee to accept the appellant's suggestion is not determinative of appellant's quasi-contractual cause of action.

In our review of the complaint to determine whether or not the preliminary objection to count II was or was not properly sustained, we bear in mind the rule that preliminary objections should be sustained and a complaint dismissed only in cases which are clear and free from doubt. *Legman v. Scranton School District,* 432 Pa. 342, 247 A. 2d 566 (1968); *Todd v. Skelly,* 384 Pa. 423, 120 A. 2d 906 (1956); *Gardner v. Allegheny County,* 382 Pa. 88, 114 A. 2d 491 (1955). To sustain preliminary objections in the nature of a demurrer, it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff. Where any doubt exists as to whether or not the preliminary objections should be sustained, that doubt should be resolved by refusing to sustain the objections. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A. 2d 472 (1960); *Sun Ray Drug Co. v. Lawler,* 366 Pa. 571, 79 A. 2d 262 (1951).

Considering the facts of this case as pleaded and admitted in light of these standards, we are of the opinion that the preliminary objection was improperly sustained. Plaintiff was told (in the letter, Exhibit C) at the time his first suggestion was rejected that that suggestion would be considered in the future should breaker redesign be undertaken. It further appears from the exhibits that such redesign was undertaken and that the Company applied the appellant's

"same basic idea" in that redesign (Exhibit F to the complaint). The appellant has alleged, further, that redesign of the panels in question and the use of this "basic idea" has resulted in savings to the Company. This states a claim upon which, if true, relief can be granted. "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Restatement of Restitution,* §1 (1937). We cannot find on the facts as alleged that it was clear as a matter of law that appellant expected no payment or intended to confer a gratuity, nor in the context of the suggestion program is it clear that the benefit was conferred officiously. We are, in short, unable to conclude that the law would not permit quasi-contractual recovery on the basis of these facts.

Relying on this Court's decision in *Thomas v. R. J. Reynolds Tobacco Co.,* 350 Pa. 262, 38 A. 2d 61 (1944), appellee argues that appellant has failed to state the indispensable elements of a quasi-contractual cause of action. We do not find that case to be controlling. We note initially that the appeal in the *Thomas* case was from an order granting defendant's motion for judgment on the record. Accordingly, the issue was whether the plaintiff at trial had established a right to recover. The question before us in this case is whether it can be said without doubt that appellant could not establish a basis for recovery if he were allowed to proceed to trial.

That issue aside we cannot find that the standards set forth in the *Thomas* case bar recovery here as a matter of law. In *Thomas,* this Court held that plaintiff could recover for use of his idea by another only upon proof that the idea was reduced to concrete form and was novel. The plaintiff in *Thomas* had gratuitously informed the Company by letter that he was persuaded that their cigarette, Camels, was the most economical brand to smoke and that other smokers

could substantiate this conclusion by comparing the time it took for Camels and other cigarettes to burn. He also attached a second letter stating that the Company could reproduce his letter for advertising purposes provided it would "recompensate" him. Roughly four years after receipt of plaintiff's letter, the Company's advertisements stressed the slow-burning economical quality of its cigarettes. Thomas then brought suit in assumpsit for the value of his suggestion. At trial there was uncontradicted evidence that the Company had been making comparative burning tests for several years before receipt of appellant's letter and that the idea contained in appellant's letter had been previously submitted to the Company. Under these facts this Court found that the "idea" in plaintiff's letter was neither concrete in form nor novel in nature and that he was not entitled to recovery.

We are unable to see how that holding governs the case before us, at least at this stage. Appellant's suggestion was set forth in writing in full compliance with the terms of the Company's suggestion program, and nothing in the complaint, including the exhibits, indicates that the idea was not in fact a novel one. While it might have been better pleading to allege categorically the ultimate fact of novelty, we think the idea is there by necessary inference and by the phrase "valuable idea", as used in paragraphs 11 and 17. Thus, there is nothing in the complaint as amended which will preclude appellant from demonstrating at trial, if he can, that his idea was indeed both concrete and novel.

In holding that plaintiff is entitled to a responsive pleading and such further proceedings as may properly follow, we do not, of course, pass even inferentially on the validity or provability of appellant's claim. We hold only that appellant has stated a cause of action in quasi-contract sufficiently well to get by a demurrer. Accordingly, we reverse the order of the lower

court sustaining the appellee's preliminary objections as to the second stated cause of action.

_____

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree that appellee's preliminary objections should be dismissed and this case should be permitted to go to trial, but I do so because, in my view, appellant's complaint alleges facts which if established would prove that appellee's actions have created a contract.

Initially I believe that for appellant to be entitled to recovery, he must establish that appellee's utilization of the procedure proposed by appellant *resulted from* appellant's suggestion. Although appellant's complaint is hardly clear as to whether it is alleging a causal connection between the suggestion and the "adoption" of the suggestion, appellant did, in his second amended complaint, allege that appellee "has appropriated to its own use and benefit" appellant's idea. Since we should allow a case to be dismissed on preliminary objections only where it is clear that on any view of the facts, a plaintiff cannot prevail, see, e.g., *Baker v. Brennan,* 419 Pa. 222, 213 A. 2d 362 (1965); *Schrader v. Heath,* 408 Pa. 79, 182 A. 2d 696 (1962), I believe that it is proper for us to consider the allegation that appellee "appropriated to its own use and benefit" the idea of appellant as pleading that appellee's use of the technique in question resulted from appellant's suggestion.

Accepting, as we must, that allegation of appellant, in my view a contract has been created, notwithstanding appellee's formal "rejection" of appellant's idea. I believe it does not matter that appellee sent appellant a notice of rejection; as long as appellee by its actions accepted the suggestion, a contract existed.* If appellee utilized appellant's idea as a result of the re-

_____

* Under this theory, as well as under that of the majority, it is irrelevant whether the contract is classified as "bilateral" or

ceipt of appellant's suggestion, appellant was entitled to whatever payment should have been forthcoming under the agreement.

I cannot accept, however, the majority's conclusion that appellant can withstand appellee's preliminary objections on an "unjust enrichment" theory. When appellant submitted his suggestion on appellee's form, in accordance with appellee's procedure, in my view he gave up any claim he might have had to unjust enrichment damages. If appellant is to recover at all, it must be within the limitations of appellee's procedure for offering suggestions. I do not believe that it is wise to become entangled in metaphysical notions of whether appellee extended an offer or an invitation to deal, and whether appellant thus tendered an acceptance or an offer. In my view it is enough to say that appellant cannot, under these circumstances, recover outside of appellee's established procedure, a procedure appellant accepted when tendering his suggestion, and thus unjust enrichment in my judgment is not appropriate.

Had appellant's suggestion been formally *accepted* by appellee, appellant presumably would have to be satisfied with a $5.00 reward if that is what the Suggestion Committee chose to pay him. But under the majority's theory, *because* appellee *"rejected"* appellant's suggestion, appellant can now receive damages perhaps in excess of the $15,000 maximum, and in no way controlled by the discretion of the Suggestion Committee. I do not believe that that distinction makes very much sense, and in any event the distinction does violence to the clear language of the written suggestion program. I therefore concur only in the result reached by the majority.

Mr. Justice O'BRIEN joins.

---

"unilateral", or whether any distinction is drawn between bilateral and unilateral contracts.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:
I dissent.

The Majority admits there was no fraud or deceit by defendant. I am strongly opposed to the doctrine of unjust enrichment. Furthermore, even if the doctrine be judicially adopted by this Court, it cannot be applied in this case in view of the written contract which so clearly prescribes and defines, and thus limits, the rights of the parties.