## Vernick v. N. W. Ayer & Son Inc.

*Bernard M. Gross,* for plaintiff.
*John J. Runzer* and *Patrick J. O'Connor,* for defendants.

BARBIERI, J., January 15, 1973.—Before the court is a motion for summary judgment under Pennsylvania Rule of Civil Procedure 1035. The suit by David Vernick, plaintiff, is for alleged misappropriation of an idea by N. W. Ayer & Son, Inc. (Ayer), advertising agent for Atlantic Richfield Company (Atlantic). The case arrived at this stage following other pleadings procedures including the filing of preliminary objections by Ayer and Atlantic. One of the two objections was dismissed and the other sustained by order of McDevitt, J., on October 3, 1968. The sustained objection was to equity jurisdiction so that the order certified the case to the law side of the court. The dismissed objection, that plaintiff is not a real party in interest, is raised again at this time. Judge McDevitt's order left this question open. His statement filed with his order reads, in part: ". . . we do not foreclose defendants from adducing evidence at trial which would prove that plaintiff is not the true party in interest."

Depositions and affidavits have been added since the date of Judge McDevitt's order, and defendants, in support of their request now for summary judgment, offer two additional contentions: First, that their unopposed affidavits must be accepted for rule 1035 purposes, leaving plaintiff with no genuine issue as to any material fact; and, second, that on the basis advanced by plaintiff in support of his claim, both factual and legal, no common-law or other protectable legal interest may be presented for a jury's consideration as a matter of law. In view of the conclusions we reach on the last of these contentions, it will not be necessary to consider the others. The summary judgment will be granted.

The basic and uncontradicted facts are as follows: Vernick offered to sell to Atlantic through Ayer a

molded plastic ball which Vernick was then marketing as an object to be attached by automobile owners to their radio antennae. Vernick offered to sell these in volume for use by Atlantic in connection with that company's current advertising program which featured "Red Ball Service." Atlantic was then using as a premium item in this merchandising program a highly elastic red bouncing ball called a "Superball." Vernick's suggestion was made while discussing another project with Ayer. The antenna ball then being marketed by Vernick was called the "Here I am Ball." This was a red and white plastic sphere sold for the purpose of attachment to the radio antenna of an automobile by its driver to aid him in locating his vehicle in a crowded parking lot. Plaintiff's ball was about the same size as Atlantic's red "Superball."

Plaintiff's claim is basically founded upon language in his sales letter to Ayer dated August 6, 1963, which reads:

"We are mailing you, under separate cover, a production unit of the 'HERE I AM' ball which you requested. You will also find a copy of a press release which was recently sent to the various publications under the trade name M. ENGLE INDUSTRIES, which is the name under which the HERE I AM will be marketed.

"We have test-marketed the 'ball' as a mail-order item in several key markets around the country, and the results have proven that the driving public of America needs our product, and what is more important will pay .98¢ in advance for it. The results have been so gratifying, that we are now in the midst of scheduling saturation advertising for the fall and winter season.

"All of the above is merely my way of saying that a more logical tie-in premium to Atlantic Refining

Company's RED BALL SERVICE campaign has never been presented. It would be almost criminal not to take advantage of the proven reaction to the HERE I AM. Of course, in volume order, the ball could be made all 'red' or any other color requested. Remember, every installation is a moving reminder of RED BALL SERVICE.

"Please let me know your thoughts in this matter."

Through subsequent correspondence Ayer requested and was quoted prices by plaintiff for a ball completely red and inscribed with the Atlantic slogan "Atlantic Red Ball." Examination of the writings contained in the series of letters attached as exhibits to the complaint reveal that there is nothing in any of them to indicate or suggest that plaintiff was proposing an idea, but the language is unambiguous and states only a proposal or offer to sell a product.

Plaintiff contends that he held his ball off of the market in reliance upon Ayer's representations of interest. The written evidence is to the contrary. The culminating understanding reached through correspondence and conversations between plaintiff and Ayer is set forth in a letter dated October 9, 1963, written to plaintiff by Ayer's Premium Buyer, Thomas F. Maxey. In that letter, Maxey states that "at the moment, the 'Here I am' item and several others are under consideration by Atlantic." Maxey also asserted in the letter that since no decision would be coming from Atlantic "in the immediate future, . . . I do not believe that there would be harm in your advertising this device in the Atlantic marketing area." There is a final letter dated January 30, 1964, which is simply an inquiry by plaintiff as to whether or not the "Here I am" car locater proposal for use in the Atlantic "Red Ball Service" campaign was still alive. Plaintiff also then noted, as he had on previous

occasions, that the ball was being merchandised elsewhere publicly, indicating "that the driving public wants to have this unique item, and will pay for it."

No further activity between the parties was recorded in writing, or took place otherwise until 1966. In 1966 Atlantic began to use an antenna ball such as the one suggested by plaintiff which was being provided by another producer. Plaintiff then instituted this law suit, claiming a violation of a common-law copyright property interest in the antenna ball use as an advertising idea, with damages claimed in excess of $10,000.

Defendants' basic position is that no copyright situation ever existed; that the only thing involved was an offer to sell a product.

The factual position of defendants, which we need not consider, as expressed by their officials is that Atlantic was never given the sales use idea, but that it remained solely within the Ayer company who decided to reject the idea and not submit it to Atlantic. Defendants' explanation for the language in Maxey's letter dated October 9, 1963, ". . . the 'Here I Am' item and several others are under consideration by Atlantic," is that he submitted the matter to John W. McWilliams, Jr., Ayer's Atlantic account executive, and McWilliams never passed it on to Atlantic.

As we have previously noted, we will not deal with this or any other contested factual contention, because of our conclusion that if all possible fact issues are resolved in favor of plaintiff, there still remains no legally acceptable basis for any claim asserted in this case.

Keeping in mind that summary judgment may not be granted under rule 1035, except where there is "no genuine issue as to any material fact . . ." and

where defendants are entitled "to a judgment as a matter of law," we turn now to the controlling legal issue: whether or not on any arguable view of the facts relied upon there is a common-law copyright or any other protectable legal interest for which recovery may be had in this case. Defendants here raise three legal questions, claiming that a ruling in their favor on any one will establish that plaintiff's case is legally insufficient. First, defendant asserts that plaintiff's idea is not protected by any common-law copyright principles available to plaintiff under Pennsylvania law, because (1) the Federal law preempts State court jurisdiction in this area, and (2) in any event, aside from Federal preemption, the legal test for protectability of an idea under a common-law copyright is not met. Second, defendant contends that plaintiff's idea is not protectable under quasi-contract principles of law. Finally, defendant asserts that no protection may be had for the idea by applying implied in fact contract principles of law.

Our analysis of the decisions and writings on the preemption question leave us without any doubt that the body of Pennsylvania common law as to copyright claims is still available for the protection of unpublished works or ideas.[1] It is clear, however, that a plaintiff's claim for idea protection whether based

---

[1] Defendant cites Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234 (1964), for the proposition that the United States Supreme Court has severely restricted common-law copyright; but see Nimmer on Copyright, §111, Rights Under Common Law Copyright, n. 438 and §169.3 Federal Preemption (1972 Supp.) n. 90L. See also Pennsylvania cases decided subsequent to Sears and Compco recognizing common-law copyright and contract claims for misappropriated ideas: Silver v. Television City, Inc., 207 Pa. Superior Ct. 150, 215 A. 2d 335 (1965); Schott v. Westinghouse Elec. Corp., 436 Pa. 279, 259 A. 2d 443 (1969).

upon common-law copyright, or upon some form of quasi-contract or implied contract, must be founded upon the same ingredients: both novelty and concreteness of the idea sought to be protected. We hold that plaintiff's idea here is, at least, lacking in novelty if not also deficient in concreteness and, in any event, represents nothing more than a suggestion for use of a nonnovel product in a merchandising campaign in which the basic idea was already being exploited by the prospective buyer in connection with a similar advertising product. In short, Atlantic was using a red ball, called "Superball," in its "Red Ball Service" campaign. Plaintiff proposed to sell for a previously merchandised use similar red balls to be given to Atlantic's customers for attachment to their automobile antennae. In our view, plaintiff offered no novelty but a product for a use which was already publicly merchandised.

We have carefully examined authorities presented by plaintiff for our consideration.[2] These have to do with advertising ideas that were novel and not, as here, with a publicly merchandised product being offered for sale to be used by the prospective buyer in its established advertising program. To accept the view of plaintiff it would be necessary for this court to rule that copyright consequences could attach whenever an offer has been made to sell a product for a use proposed or suggested by the seller. The result then would be that the offeror of the sales item would have

---

[2] See, e.g., Schott v. Westinghouse Elec. Corp., 436 Pa. 279, 259 A. 2d 443 (1969); Silver v. Television City, Inc., 207 Pa. Superior Ct. 150, 215 A. 2d 335 (1965); Stanley v. Columbia Broadcasting System, 35 Cal. 2d 653, 221 P. 2d 73 (1950); Liggett & Myers Tobacco Co., Inc. v. Meyer, 101 Ind. App. 420, 194 N. E. 206 (1935) (claims for misappropriated idea recognized). See also Thomas v. R. J. Reynolds Tobacco Co., 350 Pa. 262, 38 A. 2d 321 (1944), for case decided in favor of defendant.

a contractual hold upon the offeree, the prospective buyer, who would then not be free to purchase the product elsewhere. Here, whether or not Ayer passed plaintiff's use idea along to Atlantic between 1963 and 1966, the item remained available on the general open market, was sold and used for the purpose proposed by plaintiff to Ayer[3] and, in fact, was purchased by Atlantic from another producer. One may ask why, if plaintiff's idea is a protectable one, the producer who sold to Atlantic should not have been named as a defendant in this or some similar suit brought by plaintff.

Obviously, the distinction that must be drawn is between an offer to sell a product and an offer to sell an idea. No offer to sell an idea was made here, nor was a price demanded therefor, but merely an offer to sell a product for an established use.

Accordingly, having viewed the factual circumstances in the light most favorable to plaintiff, we hold that, as a matter of law, there is no genuine issue of a material fact as to any common-law copyright or other protectable legal interest which could properly be presented for a jury's consideration. Putting it more simply, we hold that an offer to sell a product, that is on the open market, for a use that may fit into an offeree's current advertising program is not the proposal of a protectable idea that is legally subject to copyright under the Pennsylvania common law.

## ORDER

And now, January 15, 1973, it is ordered that the motion of defendants for summary judgment in their favor is granted.

---

[3] It is uncontradicted that the aerial ball was used as a promotional item by an oil company on the United States west coast and by certain food chains in the south.