464 A.2d 1303

**Stephen CROOM, Appellant**

**v.**

**Milton SELIG and the Selig Foundation.**

Superior Court of Pennsylvania.

Submitted March 3, 1982.

Filed Aug. 19, 1983.

J. Sheridan Toaltoan, Philadelphia, for appellant.

James O. Hausch, Philadelphia, for appellees.

Before WICKERSHAM, WIEAND and HOFFMAN, JJ.

WICKERSHAM, Judge:

This is an appeal from a lower court order that dismissed appellant Stephen Croom's complaint and amended complaint and entered judgment against him. Croom's pleadings allege the following facts.

In August of 1979 the parties entered into an agreement whereby a residence at 4560 North Bouvier Street in Philadelphia was deeded to Croom in exchange for his promise to pay $50 per month towards the $6,000 purchase price. In order to secure payment of the purchase price appellee Milton Selig obtained Croom's signature on a deed conveying the residence to Colonial Securities Corporation, said deed to be filed in the event of a default by Croom.

Subsequently, Croom discovered major defects in the residence which Milton Selig agreed to pay to repair. Selig, however, did not pay for the repairs and in response Croom stopped making his $50 monthly payments. Selig then filed the deed conveying the residence to Colonial Securities Corporation and the Selig Foundation. In July, 1980, Selig commenced a landlord-tenant action against Croom seeking possession of the residence.

Croom then filed his complaint in this action seeking to quiet title against "Milton Selig, President, Colonial Securities Corporation in his individual and official capacity." Selig filed preliminary objections to the complaint, alleging that he was not a proper party as the complaint failed to state a cause of action against him, and demurring. Twenty-one days later Croom filed an amended complaint adding Colonial Securities Corporation and the Selig Foundation as defendants and containing additional counts alleging fraud and violations of the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, No. 387, as amended, 73 P.S. § 201-1 *et seq.* The defendants then filed a petition to dismiss Croom's amended complaint, alleging that Croom had failed to file such amended complaint within ten days after service of the preliminary objections.

The lower court held that the amended complaint had not been timely filed and had not been filed with either leave of court or consent of opposing parties. In addition the court found that neither complaint stated a cause of action against Selig. The court dismissed both the original and amended complaints and entered judgment against Croom. This appeal followed.

■■ Appellant Croom phrases the first question involved as:

Whether judgment could be entered solely on the basis of preliminary objections where there was [a] possible theory to [the] claims.

Brief for Appellant at 3.

In determining whether the lower court properly dismissed the complaint, we must take as true 'every well

pleaded material fact set forth in the pleading ..., as well as the inferences reasonably deducible therefrom.' *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 282, 259 A.2d 443, 445 (1969). Furthermore, we must bear in mind

> the rule that preliminary objections should be sustained and a complaint dismissed only in cases which are clear and free from doubt. *Legman v. Scranton School District,* 432 Pa. 342, 247 A.2d 566 (1968); *Todd v. Skelly,* 384 Pa. 423, 120 A.2d 906 (1956); *Gardner v. Allegheny County,* 382 Pa. 88, 114 A.2d 491 (1955). To sustain preliminary objections in the nature of a demurrer, it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff. Where any doubt exists as to whether or not the preliminary objections should be sustained, that doubt should be resolved by refusing to sustain the objections. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960); *Sun Ray Drug Co. v. Lawler,* 366 Pa. 571, 79 A.2d 262 (1951).

*Id.,* 436 Pa. at 291, 259 A.2d at 449.

*Harkins v. Zamichieli,* 266 Pa.Super. 401, 404–05, 405 A.2d 495, 497 (1979).

Croom's original complaint in action to quiet title, after identifying the sole defendant as "Milton Selig, President, Colonial Securities Corporation in his individual and official capacity," recites, inter alia, that:

> 12. In or about July, 1980, the defendant initiated a Landlord and Tenant Complaint against the defendant [sic], alleging non-payment of rent and seeking possession.

The lower court determined, after preliminary objections, that Croom had "failed to state a cause of action against Selig individually and, therefore, dismissed the complaint." Lower ct. op. at 2.

Pa.R.C.P. No. 1061(b) provides that an action to quiet title may be brought:

(2) where an action of ejectment will not lie, *to determine any right,* lien, title or interest *in the land* or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land;

(Emphasis added).

■ Viewing Croom's complaint in accordance with the principles recited in *Harkins v. Zamichieli, supra,* we cannot say that it does not ask for the determination of *any* right in the residence as against Milton Selig. Indeed, if we accept as true Croom's allegation that Milton Selig has brought a landlord-tenant action against him regarding possession of the residence it would certainly indicate that Selig was contesting rights to the property. Although it is not clear from a reading of the complaint whether Milton Selig brought the landlord-tenant action personally or as an agent of another entity, the complaint does ask for a determination of Croom's right to the residence as against Milton Selig; in so doing it states a cause of action to quiet title.

Appellant Croom phrases his second contention of error as:

Whether Pa.R.C.P. 1028(c) should be construed so as to deny a plaintiff the right to amend when he files an amended complaint more than ten days after preliminary objections.

Brief for Appellant at 3.

After Croom filed his original complaint Selig filed preliminary objections alleging that the complaint failed to state a cause of action against Selig individually. Croom then filed an amended complaint adding Colonial Securities and the Selig Foundation as defendants and also adding counts against all defendants for fraud and violations of the Unfair Trade Practices and Consumer Protection Law, *supra.* This amended complaint was not filed within ten days after service of the preliminary objections (see Pa.R.C.P. No. 1028(c)); nor was it filed with the consent of the

opposing parties or the court (see Pa.R.C.P. No. 1033). Subsequently, Selig filed a document entitled "Petition to Dismiss Amended Complaint" wherein he requested that the court strike the amended complaint because of Croom's failure to file said amended complaint within ten days of the filing of the preliminary objections or with the consent of the defendants or the court. Croom filed a response to Selig's petition to dismiss the amended complaint wherein he requested the court permit him to file an amended complaint. The lower court then dismissed Croom's original complaint for failing to state a cause of action against Selig individually and also dismissed Croom's amended complaint because it was not filed in compliance with Rule, 1028(c) or 1033. In its opinion the lower court stated that in addition to the procedural difficulties surrounding the filing of the amended complaint, said amended complaint contained several other defects. Among these defects cited by the lower court were the failure of the amended complaint to state a cause of action against the Selig Foundation, the improper addition of a claim by a private party under the Unfair Trade Practices and Consumer Protection Law, *supra* (in the lower court's opinion, such claims may only be brought by certain government officials) and a lack of specificity in the allegations of fraud. None of these defects were alleged by the defendants in their objections to the amended complaint. Only the procedural noncompliance concerning the filing of the amended complaint and the failure of the complaint and amended complaint to state a cause of action against Selig individually were advanced as reasons for dismissal by the defendants.

"The right to amend should not be withheld where there is some reasonable possibility that amendment can be accompliced successfully." *Otto v. American Mutual Insurance Co.*, 482 Pa. 202, 205, 393 A.2d 450, 451 (1978). Additionally, we note the extreme disfavor with which the termination of a lawsuit on a non-prejudicial procedural matter is held. *Byard F. Brogan, Inc. v. Holmes Electric Protective Co.*, 501 Pa. 234, 460 A.2d 1093 (1983).

Croom did, as stated earlier in this opinion, state a cause of action against Selig in his original complaint. Croom's amended complaint was dismissed pursuant to the defendants' procedural objection concerning its filing. Croom did, however, undo the procedural net he was caught up in by subsequently requesting permission to file an amended complaint, which request was never directly addressed by the lower court.

■ A review of the record in this case requires us to state that Croom has shown some possibility that amendment could be accomplished successfully. Essentially, Croom alleges that Selig (and Colonial Securities and the Selig Foundation, both acting through Selig) deliberately deceived him into signing a deed conveying the property in question. Further, Croom alleges the "reconveyance upon default" scheme of Selig, Colonial Securities and the Selig Foundation was unfair, deceptive and an attempt to evade the proper procedures for foreclosure. Croom should have been permitted to file an amended complaint advancing his contentions concerning the quiet title and fraud counts.

■ Whether Croom has shown some reasonable possibility that he could state a cause of action under the Unfair Trade Practices and Consumer Protection Law, *supra*, is our next question. The lower court indicated that only the Attorney General of Pennsylvania or a district attorney could bring an action under the Unfair Trade Practices and Consumer Protection Law, therefore, Croom's suit as a private person was patently improper. We note, however, that section 201–9.2 of the Law states:

**Private actions**

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its

discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.

73 P.S. § 201–9.2. (footnote omitted).

Yet whether a private action could be brought in the circumstances of this case remains to be established. The Pennsylvania Supreme Court has held that the underlying purpose of the Unfair Trade Practices and Consumer Protection Law is the prevention of fraud and it should be liberally construed to effect that purpose. *Commonwealth by Creamer v. Monumental Properties, Inc.,* 459 Pa. 450, 459, 329 A.2d 812, 816 (1974). Section 201–9.2 provides a remedy for a private person victimized by unlawful acts concerning *purchases* or *leases* of *goods* or *services* and the negative implication created by the use of these terms could be viewed as pointing away from the conclusion that the Unfair Trade Practices and Consumer Protection Law creates a right for private parties to sue for fraudulent practices they suffer in buying realty. In *Commonwealth v. Monumental Properties, supra,* the court stated:

'When American city dwellers both rich and poor, seek 'shelter' today, they seek a well known package of *goods and services* —a package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation, and proper maintenance.'

459 Pa. at 467–68, 329 A.2d at 821, quoting *Javins v. First National Realty Corp.,* 138 U.S.App.D.C. 369, 372, 428 F.2d 1071, 1074, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970).

Certainly if the transaction Croom alleges he was deceived on was a lease he could sue under the Unfair Trade Practices and Consumer Protection Law. On the record before us there is evidence that Croom's transaction with the defendants could possibly be regarded as a lease, including the allegation in Croom's complaint that Selig had initiated a landlord-tenant action against him for non-payment of

rent. Based on the record before us we are unable to state with certainty whether this transaction was a lease or a sale. If the transaction was a lease Croom would certainly have some reasonable chance of amending successfully and his request to amend should have been granted, completely aside from any other possible theory of recovery under the Unfair Trade Practices and Consumer Protection Law.[1]

Order and judgment reversed and case remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

---

1. We express no opinion as to whether the Unfair Trade Practices and Consumer Protection Law permits a private party to bring an action for fraudulent conduct he suffers in buying (as opposed to leasing) realty since it is not necessary for us to decide that issue here. We decide only that Croom has shown some reasonable possibility that he will be able to state causes of action under the counts he alleges.