J-A04028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROBERT WAGNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID F. GOULD III, ESQUIRE | : | |
| GOULD LAW ASSOCIATES, PC, ET. | : | |
| AL., | : | No. 1585 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered, May 9, 2018,
in the Court of Common Pleas of Bucks County,
Civil Division at No(s):  2013-02880.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and COLINS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JUNE 19, 2019**

David F. Gould III, Esquire ("Gould") and Gould Law Associates, PC, *et al.* appeal from the judgment entered against him in the amount of $500,000 following a bench trial in this breach of contract action for legal malpractice.[1] Upon review, we affirm.

Robert Wagner was a client of Gould's for many years.  Wagner owned a residential, investment property in Upper Black Eddy, Pennsylvania, which was on the market for sale.  In 2009, Gould approached Wagner about selling

---

[1] We note that all arguments raised on appeal pertain to both Gould and Gould Law Associates, PC.  However, for simplicity, we only refer to Gould in his individual capacity; the argument is the same as to both him and his law firm.
*Retired Senior Judge assigned to the Superior Court.

the property to one of Gould's other clients, Roy Stanley. In exchange for this, Gould wanted a 3% commission for locating a buyer.

Prior to the sale, Gould required Wagner and Stanley to sign a Conflict of Interest Waiver, identifying and waiving any conflicts Gould had representing Wagner and Stanley jointly in the transaction. Wagner and Stanley signed the Conflict of Interest Waiver on November 10, 2009. Gould then drafted the Agreement of Sale for the property, which Wagner and Stanley then executed on December 21, 2009.

Stanley, however, was unable to close timely per the Agreement of Sale. Wagner and Stanley agreed to extend the closing date under certain terms and conditions to be set forth in an Addendum to the Agreement of Sale.[2] Again, the parties all agreed that Gould would draft the Addendum.

Notably, Wagner agreed to extend the closing date was conditioned upon Stanley providing security for the transaction in the event the deal fell through. In particular, Wagner wanted compensation for removing the property from the market and for any potential damage to the property or household items and furnishings (personalty) during the extended delay. This security was imperative to Wagner, and Gould knew it. Stanley suggested that they use Company Owned Life Insurance ("COLI") policies, which he

---

[2] Stanley was to purchase the property for $1,500,000. Additionally, Stanley and his family was moving into the property upon the execution of the Addendum.

owned, as collateral for the Addendum to extend the closing date; Wagner agreed.

Life insurance policies totaling five million dollars ($5,000,000) face value which Alpine Holdings Trust held, secured the Addendum. In relevant part, it provided:

> SECURITY Buyer shall provide security for the Purchase Liability and the Personalty Liability through a collateral assignment to Seller of Five Million dollars ($5,000,000) face value of that assignment of certain life insurance death benefits held by the Alpine Holdings Trust simultaneously with the signing of this Addendum. Seller shall have the right to execute or act against the security so provided if Buyer fails to close on the Agreement as extended or to pay the Personalty Liability when due.

Gould assured Wagner that Stanley's collateral was adequate. Wagner and Stanley executed the Addendum on July 1, 2010. The policies were immediately transferred to Wagner pursuant to assignments, Gould also drafted.

Unbeknownst to Wagner, Gould had a financial interest in the collateral. Gould created Baron Enterprises, Inc. ("Baron") in 2009 to sell COLI policies. He and Stanley, along with another individual, were shareholders of the corporation; Gould was the president. If Baron sold a policy, Baron received a commission.

On May 3, 2010, prior to the drafting of the Addendum, Baron sold COLI Policies to Nazareth Ford, another former client of Gould's. Nazareth Ford, then assigned and transferred 75% of the legal rights, title, and interest back to Baron, and thus effectively, Gould and Stanley.

Gould then created a company called Alpine Holdings Trust. Gould, acting as Baron's president, transferred 49% of the COLI policies from Baron to Alpine. As trustee for Alpine, Gould then transferred all of Alpine's interest in the COLI policies to Wagner. All of this was all undertaken in an attempt to satisfy the collateral requirement under the Addendum.

On July 1, 2011, the closing date as extended by the Addendum, Stanley again was unable to purchase the property. Sometime thereafter, Wagner tried to collect on the collateral, but could not. Prior to the scheduled closing, a new owner of Nazareth Ford performed a full-cash surrender and closeout of the COLI policies rendering the collateral under the Addendum worthless.

Wagner filed suit against Gould, as well as Stanley, asserting breach of contract claims. Specifically, with respect to Gould, Wagner alleged that Gould breached his contract for legal services and committed malpractice.

Following a non-jury trial, the court found in favor of Wagner and entered a decision against Gould in the amount of $500,000 on November 26, 2017.[3] Gould filed a motion for post-trial relief asking for judgment notwithstanding the verdict, which the trial court denied on January 5, 2018. Judgment was entered on May 8, 2018. Gould filed a notice of appeal on May 23, 2018. Gould and the trial court complied with Pa.R.A.P. 1925(b).

We begin our analysis with a review of Gould's 1925(b) statement. The trial court found that Gould failed to provide a concise statement of matters

---

[3] The trial court also found against Stanley in the amount of $63,600. Stanley did not appeal.

- 4 -

complained of on appeal as required under Pa.R.A.P. 1925. According to the trial court, the statement was anything but concise and lacked guidance which enabled the court to properly address the errors Gould believed the court committed. Trial Court Opinion, 8/2/18, at 3. We agree. The trial court observed:

> A concise statement of matters complained of on appeal must be "concise and coherent". A statement that is too vague is functionally equivalent to no concise statement at all. Further, a statement of errors complained of on appeal must, in accordance with Pa.R.A.P. 1925(b), be "sufficiently concise and coherent" to permit the trial court to identify the issues raised on appeal. Further, "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review."

*Id.* at 3-4. The trial court endeavored to identify the issues raised by Gould. However, to the extent that the trial court was unable to do so, as we discuss later in this decision, we find Gould waived those issues.

On appeal, Gould raises the following issues:

1. Whether the trial court erred in not giving effect to the parties' contract.

2. Whether the trial court's decision is offensive to the Rules of Professional Conduct.

3. Whether the trial court erred in rendering a verdict for Wagner in the absence of substantiation of his claim and in contradiction to the evidence.

4. Whether the trial court erred in its award to Wagner where he had not shown actual loss and the award was impermissibly speculative.

*See* Gould's Brief at 5-6.[4]

Initially, we note that all Gould's issues on appeal involve questions of law. Thus, our standard of review is *de novo*, and our scope of review is plenary. *Reott v. Asia Trend Inc.*, 55 A.3d 1088, 1093 (Pa. 2012).

In his complaint, Wagner alleged that Gould committed legal malpractice based upon breach of contract. A plaintiff pursuing a legal malpractice claim under a breach of contract theory, must prove: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999). For a claim of breach of contract for legal services, an attorney may be liable for failing to adhere the terms of the contract or for failing to follow a client's specific instruction. See *Bailey v. Tucker*, 621 A.2d 108 (Pa. 1993); *Gorski v. Smith*, 812 A.2d 683, 694 (Pa. Super. 2002).

Additionally, "every contract for legal services contains, as an implied term of the contract, a promise by the attorney to render legal services in accordance with the profession at large." *Gorski*, 812 A.2d at 694. "Hence, a breach of contract claim may properly be premised on an attorney's failure

---

[4] Additionally, during the pendency of this matter, Gould filed preliminary objections, a motion for judgment on the pleadings, and a motion for summary judgment, all of which the trial court denied. In his brief, Gould suggests that the trial court erred in denying these. Gould's Brief at 3. However, as observed by Wagner, Gould did not preserve any issues related thereto other than the parole evidence issue.

to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large." *Id.*

The trial court found that Wagner and Gould had two contracts: 1)the Conflict of Interest Waiver, and 2) a verbal/implied contract for the provision of legal services in the negotiating, drafting, and executing the Agreement of Sale and the Addendum, as well as for preparing the assignments to secure the collateral for the transaction. Memorandum, 11/26/17, at 9. The trial court further found that Gould breached both of the agreements with Wagner, and that, as a result, Wagner sustained damages. *Id.* at 8-11. On appeal, Gould's arguments focus on the trial court's finding that there was a second contract, the verbal/implied contract, between Gould and Wagner, and that Wagner sustained damages from his failure to adhere to the contract.[5]

In his first issue, Gould argues that the trial court failed to give effect to the terms and conditions of the agreement between Gould and Wagner set forth in the written Conflict of Interest Waiver. According to Gould, this agreement, and only this agreement, comprehensively set forth the terms and conditions under which Gould agreed to provide services to Wagner and

---

[5] Gould does not challenge on appeal the trial court's conclusion that the Conflict of Interest Waiver did not fully disclose his conflicts or that he was in breach for failing to do so. Additionally, Gould does not argue that he did not breach the agreements. We therefore do not address this element of a breach of contract claim below.

- 7 -

Stanley in relation to the sale of property. Under this agreement, Gould was only to ascertain jointly and document evenly the parties' transaction. Gould's Brief at 24, 32. Despite this, the trial court impermissibly allowed parol evidence into the record, upon which, the trial court improperly concluded that there was a verbal/implied contract between Wagner and Gould to represent him individually. *Id.* at 28. Consequently, the trial court erred. We disagree.

Under the parole evidence rule, neither oral testimony nor prior written agreements or other writings are admissible to explain or vary the terms of a written contract that is unambiguous and held to express the embodiment of all negotiations and agreements prior to its execution. *Lenzi v. Hahnemann University,* 664 A.2d 1375, 1379 (Pa. Super. 1995).

> The issue of whether a writing constitutes an integrated contract is a question of law. A contract is integrated if it represents a final and complete expression of the parties' agreement. Where a contract purports to be a complete legal obligation without any doubt as to its object or extent, it is presumed to reflect the whole legal right of the parties.

*Id.* (citations omitted). Accordingly, we must examine the Conflict of Interest Waiver and determine if it represents the entire contract between Wagner and Gould.

It is plainly evident from the face of the Conflict of Interest Waiver, contrary to Gould's contention, that it was not an agreement for legal services. Instead, it only served to identify the conflicts Gould had in representing both Wagner and Stanley, and to have Wagner and Stanley acknowledge them.

The reference line indicated that it was regarding the "Disclosure of Conflicts in Arranging and Preparing Agreement of Sale" of the subject property. Although the letter briefly mentioned that Wagner and Stanley wanted Gould to draft the necessary documents and close on the property, and to do so, Gould stated that "it is my ethical duty to outline all of the conflicts of interest that would affect that representation and advise you to have separate legal review of the matter." He then directed the parties "to sign the letter to indicate your waiver of and consent to the conflicts". It did not outline any of the typical terms and conditions set forth in an agreement for legal services, in particular, the scope of Gould's services.

Furthermore, much of Gould's liability found by the trial court in this matter turned significantly on what transpired *after* the execution of the Conflict of Interest Waiver. In particular, the drafting of the Addendum and the securing of the collateral for the Addendum did not arise until after the execution of the Conflict of Interest Waiver. Thus, the parties could not have contemplated the provision of these services or account for Gould's conflicts relating to the collateral and parties' interest therein.[6] Consequently, the Conflict of Interest Waiver was not an integrated writing as Gould contends.

_____

[6] We further note that the parole evidence rule only precludes the use of contemporaneous or prior oral declarations to alter the import of a contract. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004); *LeDonne v. Kessler*, 389 A.2d 1123; 1126 (Pa. Super. 1978). Similarly, *post-agreement* conduct is always relevant in interpreting a writing. *See Pennsylvania Engineering Corp. v. McGraw–Edison Co.,*

We therefore conclude that the trial court did not violate the parole evidence rule by admitting evidence surrounding Gould's agreement to provide legal services and assist with securing the collateral required under the Addendum.

In his second issue, Gould argues that the trial court's conclusion is contrary to the Rules of Professional Conduct. However, we find that Gould has waived this issue. First, Gould failed to preserve his second issue for our review. Gould did not claim specifically in his post-trial motion that the trial court's conclusions offend the Rules of Professional Conduct. Failure to raise an issue in post-trial motions or exceptions result in a waiver of that issue for purposes of appellate review. **_Taylor v. Celotex Corp._**, 574 A.2d 1084, 1093 (Pa. Super. 1990); Pa.R.Civ.P. 227.1(b).

Second, although Gould discussed his efforts to comply with the Rules of Professional Conduct by requiring Wagner and Stanley to execute the Conflict of Interest Waiver, Gould did not develop this as a separate argument in his brief. Where an appellant fails to develop his argument, he waives it. **_Commonwealth v. Kane_**, 10 A.3d 327, 331-32 (Pa. Super. 2010), _appeal denied_, 29 A.3d 796 (Pa. 2011); Pa.R.A.P. 2116. Thus, Gould waived this issue, and, therefore, we do not address it.

---

459 A.2d 329 (Pa. 1983). The introduction of emails, the parties' discussions and conduct following the execution of the Conflict of Interest Waiver, particularly relating to the collateral, does not fall under the parole evidence rule.

In his third issue, Gould claims that the trial court violated the principles of contract law and erred in concluding that the evidence of record demonstrated  that there was an implied contract between Wagner and Gould. Gould's Brief at 29, 38.  Again, Gould argues that the trial court erred by ignoring the contract between the parties, i.e., the Conflict of Interest Waiver, and finding an implied contract between Wagner and Gould under which Gould owed a duty to Wagner.  Further, under the terms of the Conflict of Interest Waiver, Gould could not be subject to any liability (no breach) for a contract-based malpractice claim because that agreement expressed he was representing Wagner and Stanley jointly.  **See id.** at 39.

Additionally, Gould argues that the evidence did not establish the elements of a contract-based, malpractice claim.  Gould's Brief at 39.  In particular, Gould argues that there was no basis in the record to support the trial court's finding of either an implied attorney/client contract or a finding of damages.  **Id.** at 32, 39.

As explained above, the Conflict of Interest Waiver did not preclude the trial court from finding an implied contract.  We therefore only consider his remaining argument as to whether the evidence supported the trial court's conclusion that an implied contract between Wagner and Gould existed.[7]

A contract implied-in-fact has the same legal effect as any other contract. **Cameron v. Eynon**, 3 A.2d 423, 424 (Pa. 1939).  It differs from an

---

[7] Because Gould raised the issue of damages separately, we discuss the damages issue in detail below under the fourth issue.

express contract only in the manner of its formation. An express contract is formed by either written or verbal communication. *Id.* On the other hand, a contract implied-in-fact arises "where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances." *Id.* The trial court found that sufficient evidence was presented to support a finding that Gould impliedly agreed to provide legal services to Wagner. Memorandum, 11/26/17, at 9. We agree.

After the first scheduled closing on the property fell through, Wagner and Stanley agreed to extend the closing date under certain conditions. Gould facilitated the parties' negotiations.

Of particular import to Wagner was the requirement that Stanley provide collateral to secure the transaction. Wagner and Stanley agreed to use the COLI policies as collateral. Wagner communicated the agreed upon terms to Gould. In particular, Wagner specifically instructed that the house and personalty be cross collateralized. Gould proceeded to draft the Addendum per Wagner's direction, including this critical provision.

After receiving the draft Addendum, Wagner emailed Gould about this particular provision, amongst other things, for clarification and a better understanding about the type and amount of collateral provided. Gould further advised Wagner that "[t]he security locks in [Stanley] and provides additional security to you." Upon receiving assurance from Gould that he was covered, Wagner signed the Addendum. Gould later confirmed again for

Wagner that the collateral was currently worth ten cents on the dollar for a total of $500,000, the full amount of collateral agreed upon. Additionally, Gould prepared the assignments to secure the collateralized COLI Policies, which was critical to Wagner.

From these circumstances, it is evident that Wagner sought legal services from Gould, and Gould provided Wagner with those services. Thus, although there was no express written agreement between Wagner and Gould, based upon their actions, an implied contract clearly arose.

Moreover, when Gould provided these services, he was required to provide them with competent representation of legal knowledge, skill, and thoroughness. This is a well-established principle in our jurisprudence, and Wagner proved Gould's breach of his professional duty through competent, expert testimony.

Gould argues, however, that he had no attorney-client relationship with Wagner. This likewise contradicts the evidence presented.

Absent an express contract, an implied attorney/client relationship will be found if: 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him. **Atkinson v. Haug**, 622 A.2d 983, 986 (Pa. Super. 1993).

The evidence recited above supports the existence of an attorney-client relationship between Wagner and Gould with respect to securing the appropriate security for the Addendum. Wagner sought advice and assistance from Gould, who agreed to render those services when he actually performed the work. It was reasonable for Wagner to believe that Gould was representing him. Moreover, Gould knew that Wagner had to have the transaction secured by collateral. Writing this into the Addendum at Wagner's request had legal implications. The preparation of the assignments to transfer the collateral to Wagner was within Gould's professional competence, as there were legal ramifications in guaranteeing that Wagner had a right to the security if needed. Gould's claim that this was only a business matter is therefore inaccurate.

Because the evidence of record, when viewed in the light most favorable to Wagner, was sufficient to establish an implied contract for legal services, the trial court correctly denied Gould judgment as a matter of law.

In his last issue, Gould claims the trial court's award of damages in the amount of $500,000 was arbitrary, excessive, and speculative. Gould's Brief at 23. Specifically, he argues that Wagner failed to demonstrate how Gould's alleged breach of his professional duty resulted in actual loss to Wagner. Gould's Brief at 23, 42. Again, we disagree.

A malpractice claim requires proof of actual loss, rather than a breach of professional duty causing only nominal damages, speculative harm, or the threat of future harm. ***Kituskie v. Corbman***, 714 A.2d 1027, 1030 (Pa.

1998). "Evidence which demonstrates that a plaintiff has suffered the loss of property rights under a contract will suffice to establish 'actual injury' or 'harm' in a legal malpractice action." **Curran v. Stradley, Ronon, Stevens & Young**, 21 A.2d 451, 455 (Pa. Super). "The test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages. Thus, damages are speculative only if the uncertainty concerns the fact of damages rather than the amount." **Rizzo v. Haines**, 555 A.2d 68 (Pa. 1989).

Here, the trial court found that "there is no question that Wagner suffered actual loss of the COLI policies as collateral for the Addendum." Memorandum, 11/26/17, at 11. The parties agreed that the collateral under the Addendum was to be $500,000. Gould confirmed to Wagner that the value of the COLI policies that he obtained for Wagner was $500,000. Because the policies were ultimately worthless due to Gould's failure to ensure that the transaction was properly secured, Wagner's actual loss was $500,000.

Gould argues however that because the trial court found Stanley liable for damages only in the amount $63,600, that his liability should, likewise, be limited to that amount. Gould's Brief at 43.

The award of damages against Stanley was primarily based upon the failure to make payments as required under the Addendum. Here, however, the trial court's award was based upon Gould's failure to ensure adequate

security for Wagner's agreement to extend the closing for the sale of the property. Gould was liable for the security promised (i.e. $500,000).

Thus, there was sufficient evidence that Wagner suffered actual loss of property totaling $500,000, and the trial court did not err in finding Gould liable to Wagner in the amount of $500,000.

For the foregoing reasons, we conclude that the trial court did not err as a matter of law, and none of Gould's issues warrants relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/19/19